| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address<br><br>Gary A. Starre sbn 72793<br>Starre & Cohn APC<br>15760 Ventura Blvd. #801<br>Encino, CA 91436<br>ph 818 501 7827<br>fax 818 501 0249<br>gastarre@gmail.com<br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* The Colonnade on El Paseo LP | FOR COURT USE ONLY |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE DIVISION**

| In re:<br><br>Nicolas Lawrence Design Associates, LLC,<br>dba Modern Hacienda,<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 6:24-bk-15042-WJ<br><br>CHAPTER: 7<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l)**<br>**(with supporting declarations)**<br>**(UNLAWFUL DETAINER)**<br><br>DATE: 09/12/2024<br>TIME: 10:00 am<br>COURTROOM: 304 |

**Movant:** The Colonnade on El Paseo LP

1. **Hearing Location:**

   ☐ 255 East Temple Street, Los Angeles, CA 90012        ☐ 411 West Fourth Street, Santa Ana, CA 92701
   ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367        ☐ 1415 State Street, Santa Barbara, CA 93101
   ☒ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☐ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☒ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, ~~you must file and serve a response no later than (date) xxxxxxxxx and (time) xxxxxxxxx and you may appear at the hearing.~~ Opposition may be submitted at the hearing, and you may attend the hearing.

    a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

    b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

    c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.


Date:  09/05/2024

Starre & Cohn APC
Printed name of law firm (if applicable)

Gary A. Starre
Printed name of individual Movant or attorney for Movant


/s/ Gary A. Starre
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER
CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY
(Unlawful Detainer)**

1. **Movant is the:**

   a. ☒ Owner of the Property
   b. ☐ Authorized Agent of the owner of the Property
   c. ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   Type of Property: ☐ Residential ☒ Nonresidential

   *Street Address:* 73-399 El Paseo Drive
   *Unit/Suite Number:* #101 and 102
   *City, State, Zip Code:* Palm Desert, CA 92260

3. **Bankruptcy Case History:**

   a. ☒ A voluntary ☐ An involuntary   petition under chapter   ☒ 7 ☐ 11 ☐ 12 ☐ 13
   was filed on (*date*): 08/28/2024

   b. ☐ An order to convert this case to chapter   ☐ 7 ☐ 11 ☐ 12 ☐ 13
   was entered on (*date*):

   c. ☐ A plan was confirmed on (*date*):

4. **Pursuant to 11 U.S.C. § 362(b)(22) and (23) there is no stay because (*check all that apply*):**

   a. ☐ Movant commenced an eviction, unlawful detainer action or similar proceeding against the Debtor involving
   residential property in which the Debtor resides and:

   (1) ☐ The Debtor has not filed and served on Movant the certification required under 11 U.S.C. § 362(l)(1).

   (2) ☐ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become
   due during the 30-day period after the filing of the petition.

   (3) ☐ The Debtor or adult dependent of the Debtor has not filed and served on Movant the further certification
   required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has
   been cured.

   (4) ☐ Movant filed and served an objection to the Debtor's certification. A copy of the objection is attached as
   Exhibit _____. A hearing on this objection is set for (*date*) _____.

5. **Grounds for Relief from Stay: (*check all that apply*)**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists because, as of the bankruptcy petition date, the Debtor had
   no right to continued occupancy of the premises, as follows:

   (1) ☒ Movant caused a notice to quit to be served on the Debtor.

   (2) ☒ An unlawful detainer proceeding was commenced on (*date*) _08/23/2024_.

   (3) ☐ An unlawful detainer judgment was entered on (*date*) _____.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

(4) ☐ Movant acquired title to the Property by foreclosure sale before the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

(5) ☐ Movant acquired title to the Property by foreclosure sale after the bankruptcy petition was filed and recorded the deed within the period provided by state law for perfection.

b.    ☒ Pursuant to 11 U.S.C. § 362(d)(1) the Debtor's right to possession should be terminated because (*check all that apply*):

(1) ☒ The lease or other right of occupancy expired by its terms on (*date*) 08/16/2024

upon expiration of the 3-day notice

(2) ☒ The lease has matured, been rejected or deemed rejected by operation of law on (*date*) 08/16/2024 .

(3) ☒ Lease payments have not been made after the filing of the bankruptcy petition.

(4) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant filed and served upon the Debtor a certification that ☐ such an action was filed or
☐ that within the 30 days preceding the certification, the Debtor has endangered the subject Property or illegally allowed the use of controlled substances on the Property. A copy of Movant's certification is attached as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if any, is attached as Exhibit _____. A hearing on this objection is set for (*date*) _.

(5) ☐ The bankruptcy case was filed in bad faith:

(A) ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

(B) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

(C) ☐ The Debtor filed only a few case commencement documents. No schedules or statement of financial affairs (or chapter 13 plan, if appropriate) has been filed.

(D) ☐ There was a recent transfer of all or part ownership of, or other interest in the Property without the consent of the Movant or court approval.

c.    ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

6. **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor:

a.    ☐ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

b.    ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c.    ☐ Other:

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 4                                    F 4001-1.RFS.UD.MOTION

7.  **Evidence in Support of Motion:** (*Important Note: Declaration(s) in support of the Motion MUST be signed under penalty of perjury and attached to this motion.*)

   a.  The UNLAWFUL DETAINER DECLARATION on page 7.

   b.  ☐ Supplemental declaration(s).

   c.  ☐ Other (*specify*):

**Movant requests the following relief.**

1.  Relief from stay pursuant to:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to obtain possession of the Property.

3.  ☒ Confirmation that there is no stay in effect.

4.  ☐ The stay is annulled retroactive to the bankruptcy petition date. Any postpetition acts taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5.  ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.  ☒ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing of this motion:
   ☒ without further notice.
   ☐ upon recording of a copy of the order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8.  ☐ Relief from stay is granted under 11 U.S.C. § 362(d)(4), if the order granting this motion is recorded in compliance with state laws governing notices of interest or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than two years after the date of entry of such order, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and a hearing.

9.  ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
   ☐ without further notice.
   ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and a hearing.

11. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 5                              **F 4001-1.RFS.UD.MOTION**

12. ☒ If relief from stay is not granted with respect to the Property because the Property is the subject of a lease that may be assumable;

   a. ☐ Establishment of a deadline for assumption or rejection of the lease.

   b. ☒ Adequate protection in the form of regular payments at the lease rate from petition date until assumption or rejection of the lease.

13. ☐ Other relief requested.


Date: <u>09/05/2024</u>

                    Starre & Cohn APC
                    Print name of law firm (*if applicable*)

                    Gary A.Starre
                    Print name of individual Movant or attorney for Movant (*if applicable*)

                    /s/ Gary A. Starre
                    Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 6                    **F 4001-1.RFS.UD.MOTION**

# UNLAWFUL DETAINER DECLARATION

I, *(name of declarant)* Laura Aflalo _____, declare as follows:

1.  I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property because *(specify)*:

    a.  ☐ I am the Movant and owner of the Property.

    b.  ☒ I manage the Property as the authorized agent for the Movant.

    c.  ☐ I am employed by Movant as *(title and capacity)*:

    d.  ☐ Other *(specify)*:

2.  a. ☒ I am one of the custodians of the books, records and files of Movant as to those books, records and files that pertain to the rental of this Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b.  ☐ Other (see attached):

3.  The Property is:

    ☐ Residential   ☒ Nonresidential

    *Street Address*: 73-399 El Paseo Drive
    *Unit/Suite Number*: #101 and 102
    *City, State, Zip Code*: Palm Desert, CA 92260

4.  Movant is the   ☐ legal owner of the Property, or   ☒ the owner's legally authorized agent. A true and correct copy of the trustee's deed upon sale, lease, rental agreement, or other document evidencing Movant's interest in the Property is attached as Exhibit _1__. A true and correct copy of the applicable document establishing Movant's authority as agent for the owner is attached as Exhibit _____.

5.  The Debtor asserts a possessory interest in the Property based upon:

    (1) ☐ a month-to-month tenancy

    (2) ☒ a lease that is in default

    (3) ☐ after a foreclosure sale that was held on *(date)*: _____.

    (4) ☐ other *(specify)*:

6.  The Debtor failed to pay:

    a.  ☒ The monthly rent of $ 8,341.71 _____ beginning on *(date)*: 07/01/2024 __.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b. ☒ Other obligations including:

   (1) ☒ Common area maintenance charges

   (2) ☐ Property taxes

   (3) ☐ Other obligations (*specify*):

7. Procedural status

a. ☒ The lease matured or was rejected on (*date*) 08/16/2024  :

   (1) ☒ by operation of law.  upon expiration of the 3-day notice

   (2) ☐ by order of the court.

b. ☒ Movant caused a notice to quit to be served upon the Debtor on (*date*) 08/13/2024 , and a true and correct copy is attached as Exhibit 2  .

c. ☒ Before the bankruptcy petition was filed:

   (1) ☒ Movant filed a complaint for unlawful detainer against the Debtor on (*date*) 08/23/2024 , and a true and correct copy is attached as Exhibit 3  .

   (2) ☐ Trial was held on (*date*) _____.

   (3) ☐ Trial was continued to (*date*) _____.

   (4) ☐ An unlawful detainer judgment against the Debtor was entered on the complaint for unlawful detainer on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

   (5) ☐ A writ of possession for the Property was issued on (*date*) _____, and a true and correct copy is attached as Exhibit _____.

d. After the bankruptcy petition was filed:

   (1) ☒ The Debtor has not filed and served on the Movant the certification required under 11 U.S.C. § 362(l)(1).

   (2) ☒ The Debtor or adult dependent of the Debtor has not deposited with the clerk any rent that would become due during the 30-day period after the filing of the bankruptcy petition.

   (3) ☒ The Debtor or adult dependent of the Debtor has not filed and served on the Movant the further certification required under 11 U.S.C. § 362(l)(2) that the entire monetary default that gave rise to the judgment has been cured.

   (4) ☐ The Debtor filed and served on the Movant the certification required under 11 U.S.C. § 362(d)(1).

      (A) ☐ Movant filed and served an objection a copy of which is attached as Exhibit _____.  A hearing on this objection is set for (*date*) _____.

      (B) ☐ Movant has not filed and served an objection.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 8                              F 4001-1.RFS.UD.MOTION

(5) ☐ An unlawful detainer action was filed to obtain possession of the Property on grounds of endangerment of the Property or because of illegal use of controlled substances on the Property and Movant has filed a certification that ☐ such action was filed or ☐ that the Debtor has endangered the Property within 30 days preceding the certification or allowed the illegal use of controlled substances on the Property. A copy of Movant's certification is attached hereto as Exhibit _____. The Debtor ☐ has ☐ has not filed an objection to Movant's certification. A copy of the Debtor's objection, if filed, is attached as Exhibit ___. A hearing on this objection is set for: _____.

(6) ☐ Regular lease payments have not been made after the bankruptcy petition was filed.

8. ☒ The Debtor does not have an interest in the Property that could be assumed or assigned under 11 U.S.C. § 365.

9. ☒ The Property is not necessary to an effective reorganization because it is:

a. ☐ Residential, and is not producing income for the Debtor.

b. ☒ Commercial, but no reorganization is reasonably in prospect.

c. ☐ No longer property of the estate.

d. ☐ Other (specify):


10. ☐ The bankruptcy case was filed in bad faith:

a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b. ☐ Other bankruptcy cases have been filed in which an interest in the Property is asserted.

c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d. ☐ Other (specify):


11. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder or defraud creditors that involved:

a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page of facts establishing the scheme.

b. ☐ Multiple bankruptcy cases affecting the Property include:

(1) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

(2) Case name: _____
Chapter: _____    Case number: _____
Date filed: _____    Date discharged: _____    Date dismissed: _____
Relief from stay regarding the Property ☐ was ☐ was not granted.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                          Page 9                                          F 4001-1.RFS.UD.MOTION

(3) Case name: _____

    Chapter: _____    Case number: _____

    Date filed: _____  Date discharged: _____  Date dismissed: _____

    Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

12. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

    a. ☐ These actions were taken before Movant knew the bankruptcy petition was filed, and Movant would have been entitled to relief from stay to proceed with these actions.

    b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

    c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 9-4-24 | LAURA AFLALO | _signature_ |
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                    Page 10              F 4001-1.RFS.UD.MOTION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

15760 Ventura Blvd., Ste. 801, Encino, CA 91436

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (with supporting declarations) (UNLAWFUL DETAINER)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date) 09/05/2024 , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Arturo Cisneros (TR)     amctrustee@mclaw.org, acisneros@iq7technology.com;ecf.alert+Cisneros@titlexi.com
Peter M Lively     PeterMLively2000@yahoo.com
United States Trustee (RS)     ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL:**
On (date) 09/05/2024 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 09/05/2024 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Served Via Personal Delivery:
Hon. Wayne Johnson, USBC, 3420 Twelfth Street, bin outside of Courtroom 304, Riverside, CA 92501;
Via Overnight Mail: Nicolas Lawrence Design Associates, LLC, 1643 North Alpine Road, Suite 104, PMB 151, Rockford, IL 61107; Via Overnight Mail: Arturo Cisneros, 3403 Tenth Street, Suite 714, Riverside, CA 92501;
Via Overnight mail: United States Trustee, 3801 University Avenue, Suite 720, Riverside, CA 92501-3200

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/05/2024 | Monica Arias | /s/ Monica Arias |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Exhibit "____/____"**



# AIRCRE

## STANDARD INDUSTRIAL/COMMERCIAL MULTI-TENANT LEASE - NET

**1.    Basic Provisions ("Basic Provisions").**

**1.1    Parties.** This Lease ("Lease"), dated for reference purposes only __JUNE 13, 2022__ , is made by and between __THE COLONNADE ON EL PASEO, LP__ ("Lessor") and __NICHOLAS LAWRENCE DESIGN ASSOCIATES LLC dba MODERN HACIENDA__ ("Lessee"), (collectively the "Parties", or individually a "Party"),

**1.2(a)    Premises:** That certain real property, including all improvements therein or to be provided by Lessor under the terms of this Lease, commonly known as (street address, unit/suite, city, state): __73-399 EL PASEO DRIVE, SUITES 101 & 102, PALM DESERT, CA 92260__ ("Premises"). The Premises are located in the County of __RIVERSIDE__ , and are generally described as (describe briefly the nature of the Premises and the "Project"): __THAT APPROXIMATELY 2,945 RENTABLE SQUARE FEET PORTION OF THE GROUND FLOOR OF THE COMMERCIAL BUILDING LOCATED AT 73-399 EL PASEO DRIVE (THE "BUILDING") WHICH IS ADJACENT TO THE OTHER COMMERCIAL BUILDING LOCATED AT 73-375 EL PASEO DRIVE AND TOGETHER, THE TWO BUILDINGS COMPRISE THE "PROJECT"__ . In addition to Lessee's rights to use and occupy the Premises as hereinafter specified, Lessee shall have non-exclusive rights to any utility raceways of the building containing the Premises ("Building") and to the Common Areas (as defined in Paragraph 2.7 below), but shall not have any rights to the roof, or exterior walls of the Building or to any other buildings in the Project. The Premises, the Building, the Common Areas, the land upon which they are located, along with all other buildings and improvements thereon, are herein collectively referred to as the "Project." (See also Paragraph 2)

**1.2(b)    Parking:** __ __ unreserved vehicle parking spaces. (See also Paragraph 2.6) AUGUST 1, 2022

**1.3    Term:** __5__ years and __4__ months ("Original Term") commencing __JULY 1, 2022__ ("Commencement Date") and ending __OCTOBER 31, 2027__ ("Expiration Date"). (See also Paragraph 3)

**1.4    Early Possession:** If the Premises are available Lessee may have non-exclusive possession of the Premises commencing __UPON MUTUAL EXECUTION OF LEASE, PAYMENT OF AMOUNTS DUE UPON EXECUTION AND PROOF OF INSURANCE__ ("Early Possession Date"). (See also Paragraphs 9.2 and 3.3)

**1.5    Base Rent:** __$8,098.75__ per month ("Base Rent"), payable on the __1ST__ day of each month commencing __NOVEMBER 1, 2022__ (See also Paragraph 4)

☑ If this box is checked, there are provisions in this Lease for the Base Rent to be adjusted. See Paragraph __57__ .

**1.6    Lessee's Share of Common Area Operating Expenses:** __SEVEN AND 17/100__ percent ( __7.17__ %) ("Lessee's Share"). In the event that the size of the Premises and/or the Project are modified during the term of this Lease, Lessor shall recalculate Lessee's Share to reflect such modification.

**1.7    Base Rent and Other Monies Paid Upon Execution:** FEBRUARY 1, 2023 or upon opening for business, whichever is sooner.

(a)    Base Rent: __$8,098.75__ for the period __NOVEMBER 2022__ - FEBRUARY 1, 2023 or upon opening for business, whichever is soon

(b)    Common Area Operating Expenses: The current estimate for the period __NOVEMBER 2022__ is __$2,061.50__ .

(c)    Security Deposit: __$11,176.71__ ("Security Deposit"). (See also Paragraph 5)

(d)    Other: __ __ for __ __ .

(e)    Total Due Upon Execution of this Lease: __$21,336.96__ .

**1.8    Agreed Use:** __HOME FURNISHINGS AND DESIGN SERVICES TO INCLUDE FURNITURE, HOME ACCESSORIES, LIGHTING, ART, DECOR, GIFTS, BOOKS, STATIONERY AND TOYS, INCLUDING THE INCIDENTAL RETAIL SALES OF ITEMS AND SERVICES RELATED THERETO, AND FOR NO OTHER PURPOSE.__ . (See also Paragraph 6)

**1.9    Insuring Party.** Lessor is the "Insuring Party". (See also Paragraph 8)

**1.10    Real Estate Brokers.** (See also Paragraph 15 and 25)

(a)    **Representation:** Each Party acknowledges receiving a Disclosure Regarding Real Estate Agency Relationship, confirms and consents to the following agency relationships in this Lease with the following real estate brokers ("Broker(s)") and/or their agents ("Agent(s)"):

Lessor's Brokerage Firm __ __ License No. __ __ is the broker of (check one): ☐ the Lessor; or ☐ both the Lessee and Lessor (dual agent).

Lessor's Agent __ __ License No. __ __ is (check one): ☐ the Lessor's Agent (salesperson or broker associate); or ☐ both the Lessee's Agent and the Lessor's Agent (dual agent).

Lessee's Brokerage Firm __ __ License No. __ __ is the broker of (check one): ☐ the Lessee; or ☐ both the Lessee and Lessor (dual agent).

Lessee's Agent __ __ License No. __ __ is (check one): ☐ the Lessee's Agent (salesperson or broker associate); or ☐ both the Lessee's Agent and the Lessor's Agent (dual agent).

(b)    **Payment to Brokers.** Upon execution and delivery of this Lease by both Parties, Lessor shall pay to the Brokers the brokerage fee agreed to in a separate written agreement (or if there is no such agreement, the sum of __ __ or __ __ % of the total Base Rent) for the brokerage services rendered by the Brokers.

**1.11    Guarantor.** The obligations of the Lessee under this Lease are to be guaranteed by __NICHOLAS HERTNECK AND LAWRENCE LAZZARO__ ("Guarantor"). (See also Paragraph 37)

**1.12    Attachments.** Attached hereto are the following, all of which constitute a part of this Lease:

☑ an Addendum consisting of Paragraphs __50__ through __58__ ;

☐ a site plan depicting the Premises;

INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

☐ a site plan depicting the Project;

☐ a current set of the Rules and Regulations for the Project;

☐ a current set of the Rules and Regulations adopted by the owners' association;

☐ a Work Letter;

☑ other (specify):  RENT ADJUSTMENTS, OPTION TO EXTEND, AND GUARANTY OF LEASE ADDENDUMS .

**2.  Premises.**

2.1  **Letting.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Lease. While the approximate square footage of the Premises may have been used in the marketing of the Premises for purposes of comparison, the Base Rent stated herein is NOT tied to square footage and is not subject to adjustment should the actual size be determined to be different.  NOTE: Lessee is advised to verify the actual size prior to executing this Lease.

2.2  **Condition.** Lessor shall deliver that portion of the Premises contained within the Building ("Unit") to Lessee broom clean and free of debris on the Commencement Date or the Early Possession Date, whichever first occurs ("Start Date"), and, so long as the required service contracts described in Paragraph 7.1(b) below are obtained by Lessee and in effect within thirty days following the Start Date, warrants that the existing electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ("HVAC"), loading doors, sump pumps, if any, and all other such elements in the Unit, other than those constructed by Lessee, shall be in good operating condition on said date, that the structural elements of the roof, bearing walls and foundation of the Unit shall be free of material defects, and that the Unit does not contain hazardous levels of any mold or fungi defined as toxic under applicable state or federal law. If a non-compliance with such warranty exists as of the Start Date, or if one of such systems or elements should malfunction or fail within the appropriate warranty period, Lessor shall, as Lessor's sole obligation with respect to such matter, except as otherwise provided in this Lease, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, malfunction or failure, rectify same at Lessor's expense. The warranty periods shall be as follows: (i) 6 months as to the HVAC systems, and (ii) 30 days as to the remaining systems and other elements of the Unit. If Lessee does not give Lessor the required notice within the appropriate warranty period, correction of any such non-compliance, malfunction or failure shall be the obligation of Lessee at Lessee's sole cost and expense (except for the repairs to the fire sprinkler systems, roof, foundations, and/or bearing walls - see Paragraph 7). Lessor also warrants, that unless otherwise specified in writing, Lessor is unaware of (i) any recorded Notices of Default affecting the Premises; (ii) any delinquent amounts due under any loan secured by the Premises; and (iii) any bankruptcy proceeding affecting the Premises.

2.3  **Compliance.** Lessor warrants that to the best of its knowledge the improvements on the Premises comply with the building codes, applicable laws, covenants or restrictions of record, regulations, and ordinances ("Applicable Requirements") that were in effect at the time that each improvement, or portion thereof, was constructed. Said warranty does not apply to the use to which Lessee will put the Premises, modifications which may be required by the Americans with Disabilities Act or any similar laws as a result of Lessee's use (see Paragraph 49), or to any Alterations or Utility Installations (as defined in Paragraph 7.3(a)) made or to be made by Lessee. NOTE: Lessee is responsible for determining whether or not the Applicable Requirements, and especially the zoning are appropriate for Lessee's intended use, and acknowledges that past uses of the Premises may no longer be allowed. If the Premises do not comply with said warranty, Lessor shall, except as otherwise provided, promptly after receipt of written notice from Lessee setting forth with specificity the nature and extent of such non-compliance, rectify the same at Lessor's expense. If Lessee does not give Lessor written notice of a non-compliance with this warranty within 6 months following the Start Date, correction of that non-compliance shall be the obligation of Lessee at Lessee's sole cost and expense. If the Applicable Requirements are hereafter changed so as to require during the term of this Lease the construction of an addition to or an alteration of the Unit, Premises and/or Building, the remediation of any Hazardous Substance, or the reinforcement or other physical modification of the Unit, Premises and/or Building ("Capital Expenditure"), Lessor and Lessee shall allocate the cost of such work as follows:

(a)  Subject to Paragraph 2.3(c) below, if such Capital Expenditures are required as a result of the specific and unique use of the Premises by Lessee as compared with uses by tenants in general, Lessee shall be fully responsible for the cost thereof, provided, however, that if such Capital Expenditure is required during the last 2 years of this Lease and the cost thereof exceeds 6 months' Base Rent, Lessee may instead terminate this Lease unless Lessor notifies Lessee, in writing, within 10 days after receipt of Lessee's termination notice that Lessor has elected to pay the difference between the actual cost thereof and the amount equal to 6 months' Base Rent. If Lessee elects termination, Lessee shall immediately cease the use of the Premises which requires such Capital Expenditure and deliver to Lessor written notice specifying a termination date at least 90 days thereafter. Such termination date shall, however, in no event be earlier than the last day that Lessee could legally utilize the Premises without commencing such Capital Expenditure.

(b)  If such Capital Expenditure is not the result of the specific and unique use of the Premises by Lessee (such as, governmentally mandated seismic modifications), then Lessor shall pay for such Capital Expenditure and Lessee shall only be obligated to pay, each month during the remainder of the term of this Lease or any extension thereof, on the date that on which the Base Rent is due, an amount equal to 1/144th of the portion of such costs reasonably attributable to the Premises. Lessee shall pay interest on the balance but may prepay its obligation at any time. If, however, such Capital Expenditure is required during the last 2 years of this Lease or if Lessor reasonably determines that it is not economically feasible to pay its share thereof, Lessor shall have the option to terminate this Lease upon 90 days prior written notice to Lessee unless Lessee notifies Lessor, in writing, within 10 days after receipt of Lessor's termination notice that Lessee will pay for such Capital Expenditure. If Lessor does not elect to terminate, and fails to tender its share of any such Capital Expenditure, Lessee may advance such funds and deduct same, with interest, from Rent until Lessor's share of such costs have been fully paid. If Lessee is unable to finance Lessor's share, or if the balance of the Rent due and payable for the remainder of this Lease is not sufficient to fully reimburse Lessee on an offset basis, Lessee shall have the right to terminate this Lease upon 30 days written notice to Lessor.

(c)  Notwithstanding the above, the provisions concerning Capital Expenditures are intended to apply only to non-voluntary, unexpected, and new Applicable Requirements. If the Capital Expenditures are instead triggered by Lessee as a result of an actual or proposed change in use, change in intensity of use, or modification to the Premises then, and in that event, Lessee shall either: (i) immediately cease such changed use or intensity of use and/or take such other steps as may be necessary to eliminate the requirement for such Capital Expenditure, or (ii) complete such Capital Expenditure at its own expense. Lessee shall not have any right to terminate this Lease.

2.4  **Acknowledgements.** Lessee acknowledges that: (a) it has been given an opportunity to inspect and measure the Premises, (b) it has been advised by Lessor and/or Brokers to satisfy itself with respect to the size and condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Lessee's intended use, (c) Lessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises, (d) it is not relying on any representation as to the size of the Premises made by Brokers or Lessor, (e) the square footage of the Premises was not material to Lessee's decision to lease the Premises and pay the Rent stated herein, and (f) neither Lessor, Lessor's agents, nor Brokers have made

INITIALS                                    INITIALS

© 2019 AIR CRE. All Rights Reserved.                                    Last Edited: 7/15/2022 7:44 AM
MTN-26.30, Revised 11-25-2019                                    Page 2 of 18

any oral or written representations or warranties with respect to said matters other than as set forth in this Lease. In addition, Lessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Lessee's ability to honor the Lease or suitability to occupy the Premises, and (ii) it is Lessor's sole responsibility to investigate the financial capability and/or suitability of all proposed tenants.

2.5    **Lessee as Prior Owner/Occupant.** The warranties made by Lessor in Paragraph 2 shall be of no force or effect if immediately prior to the Start Date Lessee was the owner or occupant of the Premises. In such event, Lessee shall be responsible for any necessary corrective work.

2.6    **Vehicle Parking.** Lessee shall be entitled to use the number of Parking Spaces specified in Paragraph 1.2(b) on those portions of the Common Areas designated from time to time by Lessor for parking. Lessee shall not use more parking spaces than said number. Said parking spaces shall be used for parking by vehicles no larger than full-size passenger automobiles or pick-up trucks, herein called "Permitted Size Vehicles." Lessor may regulate the loading and unloading of vehicles by adopting Rules and Regulations as provided in Paragraph 2.9. No vehicles other than Permitted Size Vehicles may be parked in the Common Area without the prior written permission of Lessor. In addition:

(a)    Lessee shall not permit or allow any vehicles that belong to or are controlled by Lessee or Lessee's employees, suppliers, shippers, customers, contractors or invitees to be loaded, unloaded, or parked in areas other than those designated by Lessor for such activities.

(b)    Lessee shall not service or store any vehicles in the Common Areas.

(c)    If Lessee permits or allows any of the prohibited activities described in this Paragraph 2.6, then Lessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove or tow away the vehicle involved and charge the cost to Lessee, which cost shall be immediately payable upon demand by Lessor.

2.7    **Common Areas - Definition.** The term "Common Areas" is defined as all areas and facilities outside the Premises and within the exterior boundary line of the Project and interior utility raceways and installations within the Unit that are provided and designated by the Lessor from time to time for the general non-exclusive use of Lessor, Lessee and other tenants of the Project and their respective employees, suppliers, shippers, customers, contractors and invitees, including parking areas, loading and unloading areas, trash areas, roofs, roadways, walkways, driveways and landscaped areas.

2.8    **Common Areas - Lessee's Rights.** Lessor grants to Lessee, for the benefit of Lessee and its employees, suppliers, shippers, contractors, customers and invitees, during the term of this Lease, the non-exclusive right to use, in common with others entitled to such use, the Common Areas as they exist from time to time, subject to any rights, powers, and privileges reserved by Lessor under the terms hereof or under the terms of any rules and regulations or restrictions governing the use of the Project. Under no circumstances shall the right herein granted to use the Common Areas be deemed to include the right to store any property, temporarily or permanently, in the Common Areas. Any such storage shall be permitted only by the prior written consent of Lessor or Lessor's designated agent, which consent may be revoked at any time. In the event that any unauthorized storage shall occur, then Lessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove the property and charge the cost to Lessee, which cost shall be immediately payable upon demand by Lessor.

2.9    **Common Areas - Rules and Regulations.** Lessor or such other person(s) as Lessor may appoint shall have the exclusive control and management of the Common Areas and shall have the right, from time to time, to establish, modify, amend and enforce reasonable rules and regulations ("Rules and Regulations") for the management, safety, care, and cleanliness of the grounds, the parking and unloading of vehicles and the preservation of good order, as well as for the convenience of other occupants or tenants of the Building and the Project and their invitees. Lessee agrees to abide by and conform to all such rules and Regulations, and shall use its best efforts to cause its employees, suppliers, shippers, customers, contractors and invitees to so abide and conform. Lessor shall not be responsible to Lessee for the non-compliance with said Rules and Regulations by other tenants of the Project.

2.10    **Common Areas - Changes.** Lessor shall have the right, in Lessor's sole discretion, from time to time:

(a)    To make changes to the Common Areas, including, without limitation, changes in the location, size, shape and number of driveways, entrances, parking spaces, parking areas, loading and unloading areas, ingress, egress, direction of traffic, landscaped areas, walkways and utility raceways;

(b)    To close temporarily any of the Common Areas for maintenance purposes so long as reasonable access to the Premises remains available;

(c)    To designate other land outside the boundaries of the Project to be a part of the Common Areas;

(d)    To add additional buildings and improvements to the Common Areas;

(e)    To use the Common Areas while engaged in making additional improvements, repairs or alterations to the Project, or any portion thereof; and

(f)    To do and perform such other acts and make such other changes in, to or with respect to the Common Areas and Project as Lessor may, in the exercise of sound business judgment, deem to be appropriate.

**3.    Term.**

3.1    **Term.** The Commencement Date, Expiration Date and Original Term of this Lease are as specified in Paragraph 1.3.

3.2    **Early Possession.** Any provision herein granting Lessee Early Possession of the Premises is subject to and conditioned upon the Premises being available for such possession prior to the Commencement Date. Any grant of Early Possession only conveys a non-exclusive right to occupy the Premises. If Lessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such Early Possession. All other terms of this Lease (including but not limited to the obligations to pay Lessee's Share of Common Area Operating Expenses, Real Property Taxes and insurance premiums and to maintain the Premises) shall be in effect during such period. Any such Early Possession shall not affect the Expiration Date.

3.3    **Delay In Possession.** Lessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises to Lessee by the Commencement Date. If, despite said efforts, Lessor is unable to deliver possession by such date, Lessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Lease or change the Expiration Date. Lessee shall not, however, be obligated to pay Rent or perform its other obligations until Lessor delivers possession of the Premises and any period of rent abatement that Lessee would otherwise have enjoyed shall run from the date of delivery of possession and continue for a period equal to what Lessee would otherwise have enjoyed under the terms hereof, but minus any days of delay caused by the acts or omissions of Lessee. If possession is not delivered within 60 days after the Commencement Date, as the same may be extended under the terms of any Work Letter executed by Parties, Lessee may, at its option, by notice in writing within 10 days after the end of such 60 day period, cancel this Lease, in which event the Parties shall be discharged from all obligations hereunder. If such written notice is not received by Lessor within said 10 day period, Lessee's right to cancel shall terminate. If possession of the Premises is not delivered within 120 days after the Commencement Date, this Lease shall terminate unless other agreements are reached between Lessor and Lessee, in writing.

3.4    **Lessee Compliance.** Lessor shall not be required to tender possession of the Premises to Lessee until Lessee complies with its obligation to provide evidence of insurance (Paragraph 8.5). Pending delivery of such evidence, Lessee shall be required to perform all of its obligations under this Lease from and after the Start Date, including the payment of Rent, notwithstanding Lessor's election to withhold possession pending receipt of such evidence of insurance. Further, if Lessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Lessor may elect to withhold possession until such conditions are satisfied.

**4.    Rent.**

4.1    **Rent Defined.** All monetary obligations of Lessee to Lessor under the terms of this Lease (except for the Security Deposit) are deemed to be rent ("Rent").

INITIALS                INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

**4.2   Common Area Operating Expenses.** Lessee shall pay to Lessor during the term hereof, in addition to the Base Rent, Lessee's Share (as specified in Paragraph 1.6) of all Common Area Operating Expenses, as hereinafter defined, during each calendar year of the term of this Lease, in accordance with the following provisions:

(a)   "Common Area Operating Expenses" are defined, for purposes of this Lease, as all costs relating to the ownership and operation of the Project, including, but not limited to, the following:

(i)    The operation, repair and maintenance, in neat, clean, good order and condition , and if necessary the replacement, of the following:

(aa)  The Common Areas and Common Area Improvements, including parking areas, loading and unloading areas, trash areas, roadways, parkways, walkways, driveways, landscaped areas, bumpers, irrigation systems, Common Area lighting facilities, fences and gates, elevators, roofs, exterior walls of the buildings, building systems and roof drainage systems.

(bb)  Exterior signs and any tenant directories.

(cc)  Any fire sprinkler systems.

(dd)  All other areas and improvements that are within the exterior boundaries of the Project but outside of the Premises and/or any other space occupied by a tenant.

(ii)   The cost of water, gas, electricity and telephone to service the Common Areas and any utilities not separately metered.

(iii)  The cost of trash disposal, pest control services, property management, security services, owners' association dues and fees, the cost to repaint the exterior of any structures and the cost of any environmental inspections.

(iv)   Reserves set aside for maintenance, repair and/or replacement of Common Area Improvements and equipment.

(v)    Real Property Taxes (as defined in Paragraph 10).

(vi)   The cost of the premiums for the insurance maintained by Lessor pursuant to Paragraph 8.

(vii)  Any deductible portion of an insured loss concerning the Building or the Common Areas.

(viii) Auditors', accountants' and attorneys' fees and costs related to the operation, maintenance, repair and replacement of the Project.

(ix)   The cost of any capital improvement to the Building or the Project not covered under the provisions of Paragraph 2.3 provided; however, that Lessor shall allocate the cost of any such capital improvement over a 12 year period and Lessee shall not be required to pay more than Lessee's Share of 1/144th of the cost of such capital improvement in any given month.  Lessee shall pay interest on the unamortized balance but may prepay its obligation at any time.

(x)    The cost of any other services to be provided by Lessor that are stated elsewhere in this Lease to be a Common Area Operating Expense.

(b)   Any Common Area Operating Expenses and Real Property Taxes that are specifically attributable to the Unit, the Building or to any other building in the Project or to the operation, repair and maintenance thereof, shall be allocated entirely to such Unit, Building, or other building. However, any Common Area Operating Expenses and Real Property Taxes that are not specifically attributable to the Building or to any other building or to the operation, repair and maintenance thereof, shall be equitably allocated by Lessor to all buildings in the Project.

(c)   The inclusion of the improvements, facilities and services set forth in Subparagraph 4.2(a) shall not be deemed to impose an obligation upon Lessor to either have said improvements or facilities or to provide those services unless the Project already has the same, Lessor already provides the services, or Lessor has agreed elsewhere in this Lease to provide the same or some of them.

(d)   Lessee's Share of Common Area Operating Expenses is payable monthly on the same day as the Base Rent is due hereunder. The amount of such payments shall be based on Lessor's estimate of the annual Common Area Operating Expenses. Within 60 days after written request (but not more than once each year) Lessor shall deliver to Lessee a reasonably detailed statement showing Lessee's Share of the actual Common Area Operating Expenses for the preceding year. If Lessee's payments during such year exceed Lessee's Share, Lessor shall credit the amount of such over-payment against Lessee's future payments. If Lessee's payments during such year were less than Lessee's Share, Lessee shall pay to Lessor the amount of the deficiency within 10 days after delivery by Lessor to Lessee of the statement.

(e)   Common Area Operating Expenses shall not include any expenses paid by any tenant directly to third parties, or as to which Lessor is otherwise reimbursed by any third party, other tenant, or insurance proceeds.

**4.3   Payment.** Lessee shall cause payment of Rent to be received by Lessor in lawful money of the United States, without offset or deduction (except as specifically permitted in this Lease), on or before the day on which it is due. All monetary amounts shall be rounded to the nearest whole dollar. In the event that any invoice prepared by Lessor is inaccurate such inaccuracy shall not constitute a waiver and Lessee shall be obligated to pay the amount set forth in this Lease. Rent for any period during the term hereof which is for less than one full calendar month shall be prorated based upon the actual number of days of said month. Payment of Rent shall be made to Lessor at its address stated herein or to such other persons or place as Lessor may from time to time designate in writing. Acceptance of a payment which is less than the amount then due shall not be a waiver of Lessor's rights to the balance of such Rent, regardless of Lessor's endorsement of any check so stating. In the event that any check, draft, or other instrument of payment given by Lessee to Lessor is dishonored for any reason, Lessee agrees to pay to Lessor the sum of $25 in addition to any Late Charge and Lessor, at its option, may require all future Rent be paid by cashier's check. Payments will be applied first to accrued late charges and attorney's fees, second to accrued interest, then to Base Rent and Common Area Operating Expenses, and any remaining amount to any other outstanding charges or costs.

**5.   Security Deposit.** Lessee shall deposit with Lessor upon execution hereof the Security Deposit as security for Lessee's faithful performance of its obligations under this Lease. If Lessee fails to pay Rent, or otherwise Defaults under this Lease, Lessor may use, apply or retain all or any portion of said Security Deposit for the payment of any amount already due Lessor, for Rents which will be due in the future, and/ or to reimburse or compensate Lessor for any liability, expense, loss or damage which Lessor may suffer or incur by reason thereof. If Lessor uses or applies all or any portion of the Security Deposit, Lessee shall within 10 days after written request therefor deposit monies with Lessor sufficient to restore said Security Deposit to the full amount required by this Lease. If the Base Rent increases during the term of this Lease, Lessee shall, upon written request from Lessor, deposit additional monies with Lessor so that the total amount of the Security Deposit shall at all times bear the same proportion to the increased Base Rent as the initial Security Deposit bore to the initial Base Rent. Should the Agreed Use be amended to accommodate a material change in the business of Lessee or to accommodate a sublessee or assignee, Lessor shall have the right to increase the Security Deposit to the extent necessary, in Lessor's reasonable judgment, to account for any increased wear and tear that the Premises may suffer as a result thereof. If a change in control of Lessee occurs during this Lease and following such change the financial condition of Lessee is, in Lessor's reasonable judgment, significantly reduced, Lessee shall deposit such additional monies with Lessor as shall be sufficient to cause the Security Deposit to be at a commercially reasonable level based on such change in financial condition. Lessor shall not be required to keep the Security Deposit separate from its general accounts. Within 90 days after the expiration or termination of this Lease, Lessor shall return that portion of the Security Deposit not used or applied by Lessor. Lessor shall upon written request provide Lessee with an accounting showing how that portion of the Security Deposit that was not returned was applied. No part of the Security Deposit shall be considered to be held in trust, to bear interest or to be prepayment for any monies to be paid by Lessee under this Lease. THE SECURITY DEPOSIT SHALL NOT BE USED BY LESSEE IN LIEU OF PAYMENT OF THE LAST MONTH'S RENT.

INITIALS                                    INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

**6.   Use.**

6.1   **Use.** Lessee shall use and occupy the Premises only for the Agreed Use, or any other legal use which is reasonably comparable thereto, and for no other purpose. Lessee shall not use or permit the use of the Premises in a manner that is unlawful, creates damage, waste or a nuisance, or that disturbs occupants of or causes damage to neighboring premises or properties. Other than guide, signal and seeing eye dogs, Lessee shall not keep or allow in the Premises any pets, animals, birds, fish, or reptiles. Lessor shall not unreasonably withhold or delay its consent to any written request for a modification of the Agreed Use, so long as the same will not impair the structural integrity of the Building or the mechanical or electrical systems therein, and/or is not significantly more burdensome to the Project. If Lessor elects to withhold consent, Lessor shall within 7 days after such request give written notification of same, which notice shall include an explanation of Lessor's objections to the change in the Agreed Use.

6.2   **Hazardous Substances.**

(a)   **Reportable Uses Require Consent.** The term "Hazardous Substance" as used in this Lease shall mean any product, substance, or waste whose presence, use, manufacture, disposal, transportation, or release, either by itself or in combination with other materials expected to be on the Premises, is either: (i) potentially injurious to the public health, safety or welfare, the environment or the Premises, (ii) regulated or monitored by any governmental authority, or (iii) a basis for potential liability of Lessor to any governmental agency or third party under any applicable statute or common law theory. Hazardous Substances shall include, but not be limited to, hydrocarbons, petroleum, gasoline, and/or crude oil or any products, by-products or fractions thereof. Lessee shall not engage in any activity in or on the Premises which constitutes a Reportable Use of Hazardous Substances without the express prior written consent of Lessor and timely compliance (at Lessee's expense) with all Applicable Requirements. "Reportable Use" shall mean (i) the installation or use of any above or below ground storage tank, (ii) the generation, possession, storage, use, transportation, or disposal of a Hazardous Substance that requires a permit from, or with respect to which a report, notice, registration or business plan is required to be filed with, any governmental authority, and/or (iii) the presence at the Premises of a Hazardous Substance with respect to which any Applicable Requirements requires that a notice be given to persons entering or occupying the Premises or neighboring properties. Notwithstanding the foregoing, Lessee may use any ordinary and customary materials reasonably required to be used in the normal course of the Agreed Use, ordinary office supplies (copier toner, liquid paper, glue, etc.) and common household cleaning materials, so long as such use is in compliance with all Applicable Requirements, is not a Reportable Use, and does not expose the Premises or neighboring property to any meaningful risk of contamination or damage or expose Lessor to any liability therefor. In addition, Lessor may condition its consent to any Reportable Use upon receiving such additional assurances as Lessor reasonably deems necessary to protect itself, the public, the Premises and/or the environment against damage, contamination, injury and/or liability, including, but not limited to, the installation (and removal on or before Lease expiration or termination) of protective modifications (such as concrete encasements) and/or increasing the Security Deposit.

(b)   **Duty to Inform Lessor.** If Lessee knows, or has reasonable cause to believe, that a Hazardous Substance has come to be located in, on, under or about the Premises, other than as previously consented to by Lessor, Lessee shall immediately give written notice of such fact to Lessor, and provide Lessor with a copy of any report, notice, claim or other documentation which it has concerning the presence of such Hazardous Substance.

(c)   **Lessee Remediation.** Lessee shall not cause or permit any Hazardous Substance to be spilled or released in, on, under, or about the Premises (including through the plumbing or sanitary sewer system) and shall promptly, at Lessee's expense, comply with all Applicable Requirements and take all investigatory and/or remedial action reasonably recommended, whether or not formally ordered or required, for the cleanup of any contamination of, and for the maintenance, security and/or monitoring of the Premises or neighboring properties, that was caused or materially contributed to by Lessee, or pertaining to or involving any Hazardous Substance brought onto the Premises during the term of this Lease, by or for Lessee, or any third party.

(d)   **Lessee Indemnification.** Lessee shall indemnify, defend and hold Lessor, its agents, employees, lenders and ground lessor, if any, harmless from and against any and all loss of rents and/or damages, liabilities, judgments, claims, expenses, penalties, and attorneys' and consultants' fees arising out of or involving any Hazardous Substance brought onto the Premises by or for Lessee, or any third party (provided, however, that Lessee shall have no liability under this Lease with respect to underground migration of any Hazardous Substance under the Premises from areas outside of the Project not caused or contributed to by Lessee). Lessee's obligations shall include, but not be limited to, the effects of any contamination or injury to person, property or the environment created or suffered by Lessee, and the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease. No termination, cancellation or release agreement entered into by Lessor and Lessee shall release Lessee from its obligations under this Lease with respect to Hazardous Substances, unless specifically so agreed by Lessor in writing at the time of such agreement.

(e)   **Lessor Indemnification.** Except as otherwise provided in paragraph 8.7, Lessor and its successors and assigns shall indemnify, defend, reimburse and hold Lessee, its employees and lenders, harmless from and against any and all environmental damages, including the cost of remediation, which are suffered as a direct result of Hazardous Substances on the Premises prior to Lessee taking possession or which are caused by the gross negligence or willful misconduct of Lessor, its agents or employees. Lessor's obligations, as and when required by the Applicable Requirements, shall include, but not be limited to, the cost of investigation, removal, remediation, restoration and/or abatement, and shall survive the expiration or termination of this Lease.

(f)   **Investigations and Remediations.** Lessor shall retain the responsibility and pay for any investigations or remediation measures required by governmental entities having jurisdiction with respect to the existence of Hazardous Substances on the Premises prior to the Lessee taking possession, unless such remediation measure is required as a result of Lessee's use (including "Alterations", as defined in paragraph 7.3(a) below) of the Premises, in which event Lessee shall be responsible for such payment. Lessee shall cooperate fully in any such activities at the request of Lessor, including allowing Lessor and Lessor's agents to have reasonable access to the Premises at reasonable times in order to carry out Lessor's investigative and remedial responsibilities.

(g)   **Lessee Termination Option.** If a Hazardous Substance Condition (see Paragraph 9.1(e)) occurs during the term of this Lease, unless Lessee is legally responsible therefor (in which case Lessee shall make the investigation and remediation thereof required by the Applicable Requirements and this Lease shall continue in full force and effect, but subject to Lessor's rights under Paragraph 6.2(d) and Paragraph 13), Lessor may, at Lessor's option, either (i) investigate and remediate such Hazardous Substance Condition, if required, as soon as reasonably possible at Lessor's expense, in which event this Lease shall continue in full force and effect, or (ii) if the estimated cost to remediate such condition exceeds 12 times the then monthly Base Rent or $100,000, whichever is greater, give written notice to Lessee, within 30 days after receipt by Lessor of knowledge of the occurrence of such Hazardous Substance Condition, of Lessor's desire to terminate this Lease as of the date 60 days following the date of such notice. In the event Lessor elects to give a termination notice, Lessee may, within 10 days thereafter, give written notice to Lessor of Lessee's commitment to pay the amount by which the cost of the remediation of such Hazardous Substance Condition exceeds an amount equal to 12 times the then monthly Base Rent or $100,000, whichever is greater. Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days following such commitment. In such event, this Lease shall continue in full force and effect, and Lessor shall proceed to make such remediation as soon as reasonably possible after the required funds are available. If Lessee does not give such notice and provide the required funds or assurance thereof within the time provided, this Lease shall terminate as of the date specified in Lessor's notice of termination.

6.3   **Lessee's Compliance with Applicable Requirements.** Except as otherwise provided in this Lease, Lessee shall, at Lessee's sole expense, fully, diligently and in a timely manner, materially comply with all Applicable Requirements, the requirements of any applicable fire insurance underwriter or rating bureau, and the recommendations of Lessor's engineers and/or consultants which relate in any manner to the Premises, without regard to whether said Applicable Requirements are now in effect or become effective after the Start Date. Lessee shall, within 10 days after receipt of Lessor's written request, provide Lessor with copies of all permits

INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

and other documents, and other information evidencing Lessee's compliance with any Applicable Requirements specified by Lessor, and shall immediately upon receipt, notify Lessor in writing (with copies of any documents involved) of any threatened or actual claim, notice, citation, warning, complaint or report pertaining to or involving the failure of Lessee or the Premises to comply with any Applicable Requirements. Likewise, Lessee shall immediately give written notice to Lessor of: (i) any water damage to the Premises and any suspected seepage, pooling, dampness or other condition conducive to the production of mold; or (ii) any mustiness or other odors that might indicate the presence of mold in the Premises.

6.4   Inspection; Compliance. Lessor and Lessor's "Lender" (as defined in Paragraph 30) and consultants authorized by Lessor shall have the right to enter into Premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable notice, for the purpose of inspecting and/or testing the condition of the Premises and/or for verifying compliance by Lessee with this Lease. The cost of any such inspections shall be paid by Lessor, unless a violation of Applicable Requirements, or a Hazardous Substance Condition (see Paragraph 9.1) is found to exist or be imminent, or the inspection is requested or ordered by a governmental authority. In such case, Lessee shall upon request reimburse Lessor for the cost of such inspection, so long as such inspection is reasonably related to the violation or contamination. In addition, Lessee shall provide copies of all relevant material safety data sheets (MSDS) to Lessor within 10 days of the receipt of written request therefor. Lessee acknowledges that any failure on its part to allow such inspections or testing will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain. Accordingly, should the Lessee fail to allow such inspections and/or testing in a timely fashion the Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater for the remainder to the Lease. The Parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/costs that Lessor will incur by reason of Lessee's failure to allow such inspection and/or testing. Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to such failure nor prevent the exercise of any of the other rights and remedies granted hereunder.

**7.    Maintenance; Repairs; Utility Installations; Trade Fixtures and Alterations.**

   **7.1   Lessee's Obligations.**

   (a)   In General. Subject to the provisions of Paragraph 2.2 (Condition), 2.3 (Compliance), 6.3 (Lessee's Compliance with Applicable Requirements), 7.2 (Lessor's Obligations), 9 (Damage or Destruction), and 14 (Condemnation), Lessee shall, at Lessee's sole expense, keep the Premises, Utility Installations (intended for Lessee's exclusive use, no matter where located), and Alterations in good order, condition and repair (whether or not the portion of the Premises requiring repairs, or the means of repairing the same, are reasonably or readily accessible to Lessee, and whether or not the need for such repairs occurs as a result of Lessee's use, any prior use, the elements or the age of such portion of the Premises), including, but not limited to, all equipment or facilities, such as plumbing, HVAC equipment, electrical, lighting facilities, boilers, pressure vessels, fixtures, interior walls, interior surfaces of exterior walls, ceilings, floors, windows, doors, plate glass, and skylights but excluding any items which are the responsibility of Lessor pursuant to Paragraph 7.2. Lessee, in keeping the Premises in good order, condition and repair, shall exercise and perform good maintenance practices, specifically including the procurement and maintenance of the service contracts required by Paragraph 7.1(b) below, Lessee's obligations shall include restorations, replacements or renewals when necessary to keep the Premises and all Improvements thereon or a part thereof in good order, condition and state of repair.

   (b)   Service Contracts. Lessee shall, at Lessee's sole expense, procure and maintain contracts, with copies to Lessor, in customary form and substance for, and with contractors specializing and experienced in the maintenance of the following equipment and improvements, if any, if and when installed on the Premises: (i) HVAC equipment, (ii) boiler and pressure vessels, and (iii) clarifiers. However, Lessor reserves the right, upon notice to Lessee, to procure and maintain any or all of such service contracts, and Lessee shall reimburse Lessor, upon demand, for the cost thereof.

   (c)   Failure to Perform. If Lessee fails to perform Lessee's obligations under this Paragraph 7.1, Lessor may enter upon the Premises after 10 days' prior written notice to Lessee (except in the case of an emergency, in which case no notice shall be required), perform such obligations on Lessee's behalf, and put the Premises in good order, condition and repair, and Lessee shall promptly pay to Lessor a sum equal to 115% of the cost thereof.

   (d)   Replacement. Subject to Lessee's indemnification of Lessor as set forth in Paragraph 8.7 below, and without relieving Lessee of liability resulting from Lessee's failure to exercise and perform good maintenance practices, if an item described in Paragraph 7.1(b) cannot be repaired other than at a cost which is in excess of 50% of the cost of replacing such item, then such item shall be replaced by Lessor, and the cost thereof shall be prorated between the Parties and Lessee shall only be obligated to pay, each month during the remainder of the term of this Lease or any extension thereof, on the date on which Base Rent is due, an amount equal to the product of multiplying the cost of such replacement by a fraction, the numerator of which is one, and the denominator of which is 144 (ie. 1/144th of the cost per month). Lessee shall pay interest on the unamortized balance but may prepay its obligation at any time.

   **7.2**   Lessor's Obligations. Subject to the provisions of Paragraphs 2.2 (Condition), 2.3 (Compliance), 4.2 (Common Area Operating Expenses), 6 (Use), 7.1 (Lessee's Obligations), 9 (Damage or Destruction) and 14 (Condemnation), Lessor, subject to reimbursement pursuant to Paragraph 4.2, shall keep in good order, condition and repair the foundations, exterior walls, structural condition of interior bearing walls, exterior roof, fire sprinkler system, Common Area fire alarm and/or smoke detection systems, fire hydrants, parking lots, walkways, parkways, driveways, landscaping, fences, signs and utility systems serving the Common Areas and all parts thereof, as well as providing the services for which there is a Common Area Operating Expense pursuant to Paragraph 4.2. Lessor shall not be obligated to paint the exterior or interior surfaces of exterior walls nor shall Lessor be obligated to repair windows, doors or plate glass of the Premises.

   **7.3**   Utility Installations; Trade Fixtures; Alterations.

   (a)   Definitions. The term "Utility Installations" refers to all floor and window coverings, air and/or vacuum lines, power panels, electrical distribution, security and fire protection systems, communication cabling, lighting fixtures, HVAC equipment, plumbing, and fencing in or on the Premises. The term "Trade Fixtures" shall mean Lessee's machinery and equipment that can be removed without doing material damage to the Premises. The term "Alterations" shall mean any modification of the Improvements, other than Utility Installations or Trade Fixtures, whether by addition or deletion. "Lessee Owned Alterations and/or Utility Installations" are defined as Alterations and/or Utility Installations made by Lessee that are not yet owned by Lessor pursuant to Paragraph 7.4(a).

   (b)   Consent. Lessee shall not make any Alterations or Utility Installations to the Premises without Lessor's prior written consent. Lessee may, however, make non-structural Alterations or Utility Installations to the interior of the Premises (excluding the roof) without such consent but upon notice to Lessor, as long as they are not visible from the outside, do not involve puncturing, relocating or removing the roof or any existing walls, will not affect the electrical, plumbing, HVAC, and/or life safety systems, do not trigger the requirement for additional modifications and/or improvements to the Premises resulting from Applicable Requirements, such as compliance with Title 24, and/or life safety systems, and the cumulative cost thereof during this Lease as extended does not exceed a sum equal to 3 month's Base Rent in the aggregate or a sum equal to one month's Base Rent in any one year. Notwithstanding the foregoing, Lessee shall not make or permit any roof penetrations and/or install anything on the roof without the prior written approval of Lessor. Lessor may, as a precondition to granting such approval, require Lessee to utilize a contractor chosen and/or approved by Lessor. Any Alterations or Utility Installations that Lessee shall desire to make and which require the consent of the Lessor shall be presented to Lessor in written form with detailed plans. Consent shall be deemed conditioned upon Lessee's: (i) acquiring all applicable governmental permits, (ii) furnishing Lessor with copies of both the permits and the plans and specifications prior to commencement of the work, and (iii) compliance with all conditions of said permits and other Applicable Requirements in a prompt and expeditious manner. Any Alterations or Utility Installations shall be performed in a workmanlike manner with good and sufficient materials. Lessee shall promptly upon completion furnish Lessor with as-built plans and specifications. For work which

INITIALS                                    INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

costs an amount in excess of one month's Base Rent, Lessor may condition its consent upon Lessee providing a lien and completion bond in an amount equal to 150% of the estimated cost of such Alteration or Utility Installation and/or upon Lessee's posting an additional Security Deposit with Lessor.

(c)   Liens; Bonds. Lessee shall pay, when due, all claims for labor or materials furnished or alleged to have been furnished to or for Lessee at or for use on the Premises, which claims are or may be secured by any mechanic's or materialmen's lien against the Premises or any interest therein. Lessee shall give Lessor not less than 10 days notice prior to the commencement of any work in, on or about the Premises, and Lessor shall have the right to post notices of non-responsibility. If Lessee shall contest the validity of any such lien, claim or demand, then Lessee shall, at its sole expense defend and protect itself, Lessor and the Premises against the same and shall pay and satisfy any such adverse judgment that may be rendered thereon before the enforcement thereof. If Lessor shall require, Lessee shall furnish a surety bond in an amount equal to 150% of the amount of such contested lien, claim or demand, indemnifying Lessor against liability for the same. If Lessor elects to participate in any such action, Lessee shall pay Lessor's attorneys' fees and costs.

   7.4   Ownership; Removal; Surrender; and Restoration.

(a)   Ownership. Subject to Lessor's right to require removal or elect ownership as hereinafter provided, all Alterations and Utility Installations made by Lessee shall be the property of Lessee, but considered a part of the Premises. Lessor may, at any time, elect in writing to be the owner of all or any specified part of the Lessee Owned Alterations and Utility Installations. Unless otherwise instructed per paragraph 7.4(b) hereof, all Lessee Owned Alterations and Utility Installations shall, at the expiration or termination of this Lease, become the property of Lessor and be surrendered by Lessee with the Premises.

(b)   Removal. By delivery to Lessee of written notice from Lessor not earlier than 90 and not later than 30 days prior to the end of the term of this Lease, Lessor may require that any or all Lessee Owned Alterations or Utility Installations be removed by the expiration or termination of this Lease. Lessor may require the removal at any time of all or any part of any Lessee Owned Alterations or Utility Installations made without the required consent.

(c)   Surrender; Restoration. Lessee shall surrender the Premises by the Expiration Date or any earlier termination date, with all of the improvements, parts and surfaces thereof broom clean and free of debris, and in good operating order, condition and state of repair, ordinary wear and tear excepted. "Ordinary wear and tear" shall not include any damage or deterioration that would have been prevented by good maintenance practice. Notwithstanding the foregoing and the provisions of Paragraph 7.1(a), if the Lessee occupies the Premises for 12 months or less, then Lessee shall surrender the Premises in the same condition as delivered to Lessee on the Start Date with NO allowance for ordinary wear and tear. Lessee shall repair any damage occasioned by the installation, maintenance or removal of Trade Fixtures, Lessee owned Alterations and/or Utility Installations, furnishings, and equipment as well as the removal of any storage tank installed by or for Lessee. Lessee shall also remove from the Premises any and all Hazardous Substances brought onto the Premises by or for Lessee, or any third party (except Hazardous Substances which were deposited via underground migration from areas outside of the Project) to the level specified in Applicable Requirements. Trade Fixtures shall remain the property of Lessee and shall be removed by Lessee. Any personal property of Lessee not removed on or before the Expiration Date or any earlier termination date shall be deemed to have been abandoned by Lessee and may be disposed of or retained by Lessor as Lessor may desire. The failure by Lessee to timely vacate the Premises pursuant to this Paragraph 7.4(c) without the express written consent of Lessor shall constitute a holdover under the provisions of Paragraph 26 below.

**8.**   Insurance; Indemnity.

   8.1   Payment of Premiums. The cost of the premiums for the insurance policies required to be carried by Lessor, pursuant to Paragraphs 8.2(b), 8.3(a) and 8.3(b), shall be a Common Area Operating Expense. Premiums for policy periods commencing prior to, or extending beyond, the term of this Lease shall be prorated to coincide with the corresponding Start Date or Expiration Date.

   8.2   Liability Insurance.

(a)   Carried by Lessee. Lessee shall obtain and keep in force a Commercial General Liability policy of insurance protecting Lessee and Lessor as an additional insured against claims for bodily injury, personal injury and property damage based upon or arising out of the ownership, use, occupancy or maintenance of the Premises and all areas appurtenant thereto. Such insurance shall be on an occurrence basis providing single limit coverage in an amount not less than $1,000,000 per occurrence with an annual aggregate of not less than $2,000,000. Lessee shall add Lessor as an additional insured by means of an endorsement at least as broad as the Insurance Service Organization's "Additional Insured-Managers or Lessors of Premises" Endorsement. The policy shall not contain any intra-insured exclusions as between insured persons or organizations, but shall include coverage for liability assumed under this Lease as an "insured contract" for the performance of Lessee's indemnity obligations under this Lease. The limits of said insurance shall not, however, limit the liability of Lessee nor relieve Lessee of any obligation hereunder. Lessee shall provide an endorsement on its liability policy(ies) which provides that its insurance shall be primary to and not contributory with any similar insurance carried by Lessor, whose insurance shall be considered excess insurance only.

(b)   Carried by Lessor. Lessor shall maintain liability insurance as described in Paragraph 8.2(a), in addition to, and not in lieu of, the insurance required to be maintained by Lessee. Lessee shall not be named as an additional insured therein.

   8.3   Property Insurance - Building, Improvements and Rental Value.

(a)   Building and Improvements. Lessor shall obtain and keep in force a policy or policies of insurance in the name of Lessor, with loss payable to Lessor, any ground-lessor, and to any Lender insuring loss or damage to the Premises. The amount of such insurance shall be equal to the full insurable replacement cost of the Premises, as the same shall exist from time to time, or the amount required by any Lender, but in no event more than the commercially reasonable and available insurable value thereof. Lessee Owned Alterations and Utility Installations, Trade Fixtures, and Lessee's personal property shall be insured by Lessee not by Lessor. If the coverage is available and commercially appropriate, such policy or policies shall insure against all risks of direct physical loss or damage (except the perils of flood and/or earthquake unless required by a Lender), including coverage for debris removal and the enforcement of any Applicable Requirements requiring the upgrading, demolition, reconstruction or replacement of any portion of the Premises as the result of a covered loss. Said policy or policies shall also contain an agreed valuation provision in lieu of any coinsurance clause, waiver of subrogation, and inflation guard protection causing an increase in the annual property insurance coverage amount by a factor of not less than the adjusted U.S. Department of Labor Consumer Price Index for All Urban Consumers for the city nearest to where the Premises are located. If such insurance coverage has a deductible clause, the deductible amount shall not exceed $5,000 per occurrence.

(b)   Rental Value. Lessor shall also obtain and keep in force a policy or policies in the name of Lessor with loss payable to Lessor and any Lender, insuring the loss of the full Rent for one year with an extended period of indemnity for an additional 180 days ("Rental Value Insurance"). Said insurance shall contain an agreed valuation provision in lieu of any coinsurance clause, and the amount of coverage shall be adjusted annually to reflect the projected Rent otherwise payable by Lessee, for the next 12 month period.

(c)   Adjacent Premises. Lessee shall pay for any increase in the premiums for the property insurance of the Building and for the Common Areas or other buildings in the Project if said increase is caused by Lessee's acts, omissions, use or occupancy of the Premises.

(d)   Lessee's Improvements. Since Lessor is the insuring Party, Lessor shall not be required to insure Lessee Owned Alterations and Utility Installations unless the item in question has become the property of Lessor under the terms of this Lease.

   8.4   Lessee's Property; Business Interruption Insurance; Worker's Compensation Insurance.

(a)   Property Damage. Lessee shall obtain and maintain insurance coverage on all of Lessee's personal property, Trade Fixtures, and Lessee Owned Alterations and Utility Installations. Such insurance shall be full replacement cost coverage with a deductible of not to exceed $1,000 per occurrence. The proceeds

INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

from any such insurance shall be used by Lessee ror the replacement of personal property, Trade Fixtures and Lessee Owned Alterations and Utility Installations.

(b)    Business Interruption. Lessee shall obtain and maintain loss of income and extra expense insurance in amounts as will reimburse Lessee for direct or indirect loss of earnings attributable to all perils commonly insured against by prudent lessees in the business of Lessee or attributable to prevention of access to the Premises as a result of such perils.

(c)    Worker's Compensation Insurance. Lessee shall obtain and maintain Worker's Compensation Insurance in such amount as may be required by Applicable Requirements. Such policy shall include a "Waiver of Subrogation" endorsement. Lessee shall provide Lessor with a copy of such endorsement along with the certificate of insurance or copy of the policy required by paragraph 8.5.

(d)    No Representation of Adequate Coverage. Lessor makes no representation that the limits or forms of coverage of insurance specified herein are adequate to cover Lessee's property, business operations or obligations under this Lease.

8.5    Insurance Policies. Insurance required herein shall be by companies maintaining during the policy term a "General Policyholders Rating" of at least A-, VII, as set forth in the most current issue of "Best's Insurance Guide", or such other rating as may be required by a Lender. Lessee shall not do or permit to be done anything which invalidates the required insurance policies. Lessee shall, prior to the Start Date, deliver to Lessor certified copies of policies of such insurance or certificates with copies of the required endorsements evidencing the existence and amounts of the required insurance. No such policy shall be cancelable or subject to modification except after 30 days prior written notice to Lessor. Lessee shall, at least 10 days prior to the expiration of such policies, furnish Lessor with evidence of renewals or "insurance binders" evidencing renewal thereof, or Lessor may increase his liability insurance coverage and charge the cost thereof to Lessee, which amount shall be payable by Lessee to Lessor upon demand. Such policies shall be for a term of at least one year, or the length of the remaining term of this Lease, whichever is less. If either Party shall fail to procure and maintain the insurance required to be carried by it, the other Party may, but shall not be required to, procure and maintain the same.

8.6    Waiver of Subrogation. Without affecting any other rights or remedies, Lessee and Lessor each hereby release and relieve the other, and waive their entire right to recover damages against the other, for loss of or damage to its property arising out of or incident to the perils required to be insured against herein. The effect of such releases and waivers is not limited by the amount of insurance carried or required, or by any deductibles applicable hereto. The Parties agree to have their respective property damage insurance carriers waive any right to subrogation that such companies may have against Lessor or Lessee, as the case may be, so long as the insurance is not invalidated thereby.

8.7    Indemnity. Except for Lessor's gross negligence or willful misconduct, Lessee shall indemnify, protect, defend and hold harmless the Premises, Lessor and its agents, Lessor's master or ground lessor, partners and Lenders, from and against any and all claims, loss of rents and/or damages, liens, judgments, penalties, attorneys' and consultants' fees, expenses and/or liabilities arising out of, involving, or in connection with, a Breach of the Lease by Lessee and/or the use and/or occupancy of the Premises and/or Project by Lessee and/or by Lessee's employees, contractors or invitees. If any action or proceeding is brought against Lessor by reason of any of the foregoing matters, Lessee shall upon notice defend the same at Lessee's expense by counsel reasonably satisfactory to Lessor and Lessor shall cooperate with Lessee in such defense. Lessor need not have first paid any such claim in order to be defended or indemnified.

8.8    Exemption of Lessor and its Agents from Liability. Notwithstanding the negligence or breach of this Lease by Lessor or its agents, neither Lessor nor its agents shall be liable under any circumstances for: (i) injury or damage to the person or goods, wares, merchandise or other property of Lessee, Lessee's employees, contractors, invitees, customers, or any other person in or about the Premises, whether such damage or injury is caused by or results from fire, steam, electricity, gas, water or rain, indoor air quality, the presence of mold or from the breakage, leakage, obstruction or other defects of pipes, fire sprinklers, wires, appliances, plumbing, HVAC or lighting fixtures, or from any other cause, whether the said injury or damage results from conditions arising upon the Premises or upon other portions of the Building, or from other sources or places, (ii) any damages arising from any act or neglect of any other tenant of Lessor or from the failure of Lessor or its agents to enforce the provisions of any other lease in the Project, or (iii) injury to Lessee's business or for any loss of income or profit therefrom. Instead, it is intended that Lessee's sole recourse in the event of such damages or injury be to file a claim on the insurance policy(ies) that Lessee is required to maintain pursuant to the provisions of paragraph 8.

8.9    Failure to Provide Insurance. Lessee acknowledges that any failure on its part to obtain or maintain the insurance required herein will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain. Accordingly, for any month or portion thereof that Lessee does not maintain the required insurance and/or does not provide Lessor with the required binders or certificates evidencing the existence of the required insurance, the Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater. The parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/costs that Lessor will incur by reason of Lessee's failure to maintain the required insurance. Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to the failure to maintain such insurance, prevent the exercise of any of the other rights and remedies granted hereunder, nor relieve Lessee of its obligation to maintain the insurance specified in this Lease.

9.    Damage or Destruction.

9.1    Definitions.

(a)    "Premises Partial Damage" shall mean damage or destruction to the improvements on the Premises, other than Lessee Owned Alterations and Utility Installations, which can reasonably be repaired in 3 months or less from the date of the damage or destruction, and the cost thereof does not exceed a sum equal to 6 month's Base Rent. Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

(b)    "Premises Total Destruction" shall mean damage or destruction to the improvements on the Premises, other than Lessee Owned Alterations and Utility Installations and Trade Fixtures, which cannot reasonably be repaired in 3 months or less from the date of the damage or destruction and/or the cost thereof exceeds a sum equal to 6 month's Base Rent. Lessor shall notify Lessee in writing within 30 days from the date of the damage or destruction as to whether or not the damage is Partial or Total.

(c)    "Insured Loss" shall mean damage or destruction to improvements on the Premises, other than Lessee Owned Alterations and Utility Installations and Trade Fixtures, which was caused by an event required to be covered by the insurance described in Paragraph 8.3(a), irrespective of any deductible amounts or coverage limits involved.

(d)    "Replacement Cost" shall mean the cost to repair or rebuild the improvements owned by Lessor at the time of the occurrence to their condition existing immediately prior thereto, including demolition, debris removal and upgrading required by the operation of Applicable Requirements, and without deduction for depreciation.

(e)    "Hazardous Substance Condition" shall mean the occurrence or discovery of a condition involving the presence of, or a contamination by, a Hazardous Substance, in, on, or under the Premises which requires restoration.

9.2    Partial Damage - Insured Loss. If a Premises Partial Damage that is an insured Loss occurs, then Lessor shall, at Lessor's expense, repair such damage (but not Lessee's Trade Fixtures or Lessee Owned Alterations and Utility Installations) as soon as reasonably possible and this Lease shall continue in full force and effect; provided, however, that Lessee shall, at Lessor's election, make the repair of any damage or destruction the total cost to repair of which is $10,000 or less, and, in such event, Lessor shall make any applicable insurance proceeds available to Lessee on a reasonable basis for that purpose. Notwithstanding the foregoing, if the required

INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

insurance was not in force or the insurance proceeds are not sufficient to effect such repair, the insuring Party shall promptly contribute the shortage in proceeds as and when required to complete said repairs. In the event, however, such shortage was due to the fact that, by reason of the unique nature of the improvements, full replacement cost insurance coverage was not commercially reasonable and available, Lessor shall have no obligation to pay for the shortage in insurance proceeds or to fully restore the unique aspects of the Premises unless Lessee provides Lessor with the funds to cover same, or adequate assurance thereof, within 10 days following receipt of written notice of such shortage and request therefor. If Lessor receives said funds or adequate assurance thereof within said 10 day period, the party responsible for making the repairs shall complete them as soon as reasonably possible and this Lease shall remain in full force and effect. If such funds or assurance are not received, Lessor may nevertheless elect by written notice to Lessee within 10 days thereafter to: (i) make such restoration and repair as is commercially reasonable with Lessor paying any shortage in proceeds, in which case this Lease shall remain in full force and effect, or (ii) have this Lease terminate 30 days thereafter. Lessee shall not be entitled to reimbursement of any funds contributed by Lessee to repair any such damage or destruction. Premises Partial Damage due to flood or earthquake shall be subject to Paragraph 9.3, notwithstanding that there may be some insurance coverage, but the net proceeds of any such insurance shall be made available for the repairs if made by either Party.

9.3    Partial Damage - Uninsured Loss. If a Premises Partial Damage that is not an Insured Loss occurs, unless caused by a negligent or willful act of Lessee (in which event Lessee shall make the repairs at Lessee's expense), Lessor may either: (i) repair such damage as soon as reasonably possible at Lessor's expense (subject to reimbursement pursuant to Paragraph 4.2), in which event this Lease shall continue in full force and effect, or (ii) terminate this Lease by giving written notice to Lessee within 30 days after receipt by Lessor of knowledge of the occurrence of such damage. Such termination shall be effective 60 days following the date of such notice. In the event Lessor elects to terminate this Lease, Lessee shall have the right within 10 days after receipt of the termination notice to give written notice to Lessor of Lessee's commitment to pay for the repair of such damage without reimbursement from Lessor. Lessee shall provide Lessor with said funds or satisfactory assurance thereof within 30 days after making such commitment. In such event this Lease shall continue in full force and effect, and Lessor shall proceed to make such repairs as soon as reasonably possible after the required funds are available. If Lessee does not make the required commitment, this Lease shall terminate as of the date specified in the termination notice.

9.4    Total Destruction. Notwithstanding any other provision hereof, if a Premises Total Destruction occurs, this Lease shall terminate 60 days following such Destruction. If the damage or destruction was caused by the gross negligence or willful misconduct of Lessee, Lessor shall have the right to recover Lessor's damages from Lessee, except as provided in Paragraph 8.6.

9.5    Damage Near End of Term. If at any time during the last 6 months of this Lease there is damage for which the cost to repair exceeds one month's Base Rent, whether or not an Insured Loss, Lessor may terminate this Lease effective 60 days following the date of occurrence of such damage by giving a written termination notice to Lessee within 30 days after the date of occurrence of such damage. Notwithstanding the foregoing, if Lessee at that time has an exercisable option to extend this Lease or to purchase the Premises, then Lessee may preserve this Lease by, (a) exercising such option and (b) providing Lessor with any shortage in insurance proceeds (or adequate assurance thereof) needed to make the repairs on or before the earlier of (i) the date which is 10 days after Lessee's receipt of Lessor's written notice purporting to terminate this Lease, or (ii) the day prior to the date upon which such option expires. If Lessee duly exercises such option during such period and provides Lessor with funds (or adequate assurance thereof) to cover any shortage in insurance proceeds, Lessor shall, at Lessor's commercially reasonable expense, repair such damage as soon as reasonably possible and this Lease shall continue in full force and effect. If Lessee fails to exercise such option and provide such funds or assurance during such period, then this Lease shall terminate on the date specified in the termination notice and Lessee's option shall be extinguished.

9.6    Abatement of Rent; Lessee's Remedies.

(a)    Abatement. In the event of Premises Partial Damage or Premises Total Destruction or a Hazardous Substance Condition for which Lessee is not responsible under this Lease, the Rent payable by Lessee for the period required for the repair, remediation or restoration of such damage shall be abated in proportion to the degree to which Lessee's use of the Premises is impaired, but not to exceed the proceeds received from the Rental Value Insurance. All other obligations of Lessee hereunder shall be performed by Lessee, and Lessor shall have no liability for any such damage, destruction, remediation, repair or restoration except as provided herein.

(b)    Remedies. If Lessor is obligated to repair or restore the Premises and does not commence, in a substantial and meaningful way, such repair or restoration within 90 days after such obligation shall accrue, Lessee may, at any time prior to the commencement of such repair or restoration, give written notice to Lessor and to any Lenders of which Lessee has actual notice, of Lessee's election to terminate this Lease on a date not less than 60 days following the giving of such notice. If Lessee gives such notice and such repair or restoration is not commenced within 30 days thereafter, this Lease shall terminate as of the date specified in said notice. If the repair or restoration is commenced within such 30 days, this Lease shall continue in full force and effect. "Commence" shall mean either the unconditional authorization of the preparation of the required plans, or the beginning of the actual work on the Premises, whichever first occurs.

9.7    Termination; Advance Payments. Upon termination of this Lease pursuant to Paragraph 6.2(g) or Paragraph 9, an equitable adjustment shall be made concerning advance Base Rent and any other advance payments made by Lessee to Lessor. Lessor shall, in addition, return to Lessee so much of Lessee's Security Deposit as has not been, or is not then required to be, used by Lessor.

## 10.    Real Property Taxes.

10.1    Definition. As used herein, the term "Real Property Taxes" shall include any form of assessment; real estate, general, special, ordinary or extraordinary, or rental levy or tax (other than inheritance, personal income or estate taxes); improvement bond; and/or license fee imposed upon or levied against any legal or equitable interest of Lessor in the Project, Lessor's right to other income therefrom, and/or Lessor's business of leasing, by any authority having the direct or indirect power to tax and where the funds are generated with reference to the Project address. The term "Real Property Taxes" shall also include any tax, fee, levy, assessment or charge, or any increase therein: (i) imposed by reason of events occurring during the term of this Lease, including but not limited to, a change in the ownership of the Project, (ii) a change in the improvements thereon, and/or (iii) levied or assessed on machinery or equipment provided by Lessor to Lessee pursuant to this Lease. In calculating Real Property Taxes for any calendar year, the Real Property Taxes for any real estate tax year shall be included in the calculation of Real Property Taxes for such calendar year based upon the number of days which such calendar year and tax year have in common.

10.2    Payment of Taxes. Except as otherwise provided in Paragraph 10.3, Lessor shall pay the Real Property Taxes applicable to the Project, and said payments shall be included in the calculation of Common Area Operating Expenses in accordance with the provisions of Paragraph 4.2.

10.3    Additional Improvements. Common Area Operating Expenses shall not include Real Property Taxes specified in the tax assessor's records and work sheets as being caused by additional improvements placed upon the Project by other lessees or by Lessor for the exclusive enjoyment of such other lessees. Notwithstanding Paragraph 10.2 hereof, Lessee shall, however, pay to Lessor at the time Common Area Operating Expenses are payable under Paragraph 4.2, the entirety of any increase in Real Property Taxes if assessed solely by reason of Alterations, Trade Fixtures or Utility installations placed upon the Premises by Lessee or at Lessee's request or by reason of any alterations or improvements to the Premises made by Lessor subsequent to the execution of this Lease by the Parties.

10.4    Joint Assessment. If the Building is not separately assessed, Real Property Taxes allocated to the Building shall be an equitable proportion of the Real Property Taxes for all of the land and improvements included within the tax parcel assessed, such proportion to be determined by Lessor from the respective valuations assigned in the assessor's work sheets or such other information as may be reasonably available. Lessor's reasonable determination thereof, in good faith,

INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

shall be conclusive.

10.5  **Personal Property Taxes.** Lessee shall pay prior to delinquency all taxes assessed against and levied upon Lessee Owned Alterations and Utility Installations, Trade Fixtures, furnishings, equipment and all personal property of Lessee contained in the Premises. When possible, Lessee shall cause its Lessee Owned Alterations and Utility Installations, Trade Fixtures, furnishings, equipment and all other personal property to be assessed and billed separately from the real property of Lessor. If any of Lessee's said property shall be assessed with Lessor's real property, Lessee shall pay Lessor the taxes attributable to Lessee's property within 10 days after receipt of a written statement setting forth the taxes applicable to Lessee's property.

11.  **Utilities and Services.** Lessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon. Notwithstanding the provisions of Paragraph 4.2, if at any time in Lessor's sole judgment, Lessor determines that Lessee is using a disproportionate amount of water, electricity or other commonly metered utilities, or that Lessee is generating such a large volume of trash as to require an increase in the size of the trash receptacle and/or an increase in the number of times per month that it is emptied, then Lessor may increase Lessee's Base Rent by an amount equal to such increased costs. There shall be no abatement of Rent and Lessor shall not be liable in any respect whatsoever for the inadequacy, stoppage, interruption or discontinuance of any utility or service due to riot, strike, labor dispute, breakdown, accident, repair or other cause beyond Lessor's reasonable control or in cooperation with governmental request or directions.

Within fifteen days of Lessor's written request, Lessee agrees to deliver to Lessor such information, documents and/or authorization as Lessor needs in order for Lessor to comply with new or existing Applicable Requirements relating to commercial building energy usage, ratings, and/or the reporting thereof.

12.  **Assignment and Subletting.**

12.1  **Lessor's Consent Required.**

(a)  Lessee shall not voluntarily or by operation of law assign, transfer, mortgage or encumber (collectively, "assign or assignment") or sublet all or any part of Lessee's interest in this Lease or in the Premises without Lessor's prior written consent.

(b)  Unless Lessee is a corporation and its stock is publicly traded on a national stock exchange, a change in the control of Lessee shall constitute an assignment requiring consent. The transfer, on a cumulative basis, of 25% or more of the voting control of Lessee shall constitute a change in control for this purpose.

(c)  The involvement of Lessee or its assets in any transaction, or series of transactions (by way of merger, sale, acquisition, financing, transfer, leveraged buy-out or otherwise), whether or not a formal assignment or hypothecation of this Lease or Lessee's assets occurs, which results or will result in a reduction of the Net Worth of Lessee by an amount greater than 25% of such Net Worth as it was represented at the time of the execution of this Lease or at the time of the most recent assignment to which Lessor has consented, or as it exists immediately prior to said transaction or transactions constituting such reduction, whichever was or is greater, shall be considered an assignment of this Lease to which Lessor may withhold its consent. "Net Worth of Lessee" shall mean the net worth of Lessee (excluding any guarantors) established under generally accepted accounting principles.

(d)  An assignment or subletting without consent shall, at Lessor's option, be a Default curable after notice per Paragraph 13.1(d), or a noncurable Breach without the necessity of any notice and grace period. If Lessor elects to treat such unapproved assignment or subletting as a noncurable Breach, Lessor may either: (i) terminate this Lease, or (ii) upon 30 days written notice, increase the monthly Base Rent to 110% of the Base Rent then in effect. Further, in the event of such Breach and rental adjustment, (i) the purchase price of any option to purchase the Premises held by Lessee shall be subject to similar adjustment to 110% of the price previously in effect, and (ii) all fixed and non-fixed rental adjustments scheduled during the remainder of the Lease term shall be increased to 110% of the scheduled adjusted rent.

(e)  Lessee's remedy for any breach of Paragraph 12.1 by Lessor shall be limited to compensatory damages and/or injunctive relief.

(f)  Lessor may reasonably withhold consent to a proposed assignment or subletting if Lessee is in Default at the time consent is requested.

(g)  Notwithstanding the foregoing, allowing a de minimis portion of the Premises, i.e. 20 square feet or less, to be used by a third party vendor in connection with the installation of a vending machine or payphone shall not constitute a subletting.

12.2  **Terms and Conditions Applicable to Assignment and Subletting.**

(a)  Regardless of Lessor's consent, no assignment or subletting shall: (i) be effective without the express written assumption by such assignee or sublessee of the obligations of Lessee under this Lease, (ii) release Lessee of any obligations hereunder, or (iii) alter the primary liability of Lessee for the payment of Rent or for the performance of any other obligations to be performed by Lessee.

(b)  Lessor may accept Rent or performance of Lessee's obligations from any person other than Lessee pending approval or disapproval of an assignment. Neither a delay in the approval or disapproval of such assignment nor the acceptance of Rent or performance shall constitute a waiver or estoppel of Lessor's right to exercise its remedies for Lessee's Default or Breach.

(c)  Lessor's consent to any assignment or subletting shall not constitute a consent to any subsequent assignment or subletting.

(d)  In the event of any Default or Breach by Lessee, Lessor may proceed directly against Lessee, any Guarantors or anyone else responsible for the performance of Lessee's obligations under this Lease, including any assignee or sublessee, without first exhausting Lessor's remedies against any other person or entity responsible therefor to Lessor, or any security held by Lessor.

(e)  Each request for consent to an assignment or subletting shall be in writing, accompanied by information relevant to Lessor's determination as to the financial and operational responsibility and appropriateness of the proposed assignee or sublessee, including but not limited to the intended use and/or required modification of the Premises, if any, together with a fee of $500 as consideration for Lessor's considering and processing said request. Lessee agrees to provide Lessor with such other or additional information and/or documentation as may be reasonably requested. (See also Paragraph 36)

(f)  Any assignee of, or sublessee under, this Lease shall, by reason of accepting such assignment, entering into such sublease, or entering into possession of the Premises or any portion thereof, be deemed to have assumed and agreed to conform and comply with each and every term, covenant, condition and obligation herein to be observed or performed by Lessee during the term of said assignment or sublease, other than such obligations as are contrary to or inconsistent with provisions of an assignment or sublease to which Lessor has specifically consented to in writing.

(g)  Lessor's consent to any assignment or subletting shall not transfer to the assignee or sublessee any Option granted to the original Lessee by this Lease unless such transfer is specifically consented to by Lessor in writing. [See Paragraph 39.2]

12.3  **Additional Terms and Conditions Applicable to Subletting.** The following terms and conditions shall apply to any subletting by Lessee of all or any part of the Premises and shall be deemed included in all subleases under this Lease whether or not expressly incorporated therein:

(a)  Lessee hereby assigns and transfers to Lessor all of Lessee's interest in all Rent payable on any sublease, and Lessor may collect such Rent and apply same toward Lessee's obligations under this Lease; provided, however, that until a Breach shall occur in the performance of Lessee's obligations, Lessee may collect said Rent. In the event that the amount collected by Lessor exceeds Lessee's then outstanding obligations any such excess shall be refunded to Lessee. Lessor shall not, by reason of the foregoing or any assignment of such sublease, nor by reason of the collection of Rent, be deemed liable to the sublessee for any failure of Lessee to perform and comply with any of Lessee's obligations to such sublessee. Lessee hereby irrevocably authorizes and directs any such sublessee, upon receipt of a written notice from Lessor stating that a Breach exists in the performance of Lessee's obligations under this Lease, to pay to Lessor all Rent due and to become due

INITIALS                                INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

Last Edited: 7/15/2022 7:44 AM
Page 10 of 18

under the sublease. Sublessee shall rely upon any such notice from Lessor and shall pay all Rents to Lessor without any obligation or right to inquire as to whether such Breach exists, notwithstanding any claim from Lessee to the contrary.

(b)   In the event of a Breach by Lessee, Lessor may, at its option, require sublessee to attorn to Lessor, in which event Lessor shall undertake the obligations of the sublessor under such sublease from the time of the exercise of said option to the expiration of such sublease; provided, however, Lessor shall not be liable for any prepaid rents or security deposit paid by such sublessee to such sublessor or for any prior Defaults or Breaches of such sublessor.

(c)   Any matter requiring the consent of the sublessor under a sublease shall also require the consent of Lessor.

(d)   No sublessee shall further assign or sublet all or any part of the Premises without Lessor's prior written consent.

(e)   Lessor shall deliver a copy of any notice of Default or Breach by Lessee to the sublessee, who shall have the right to cure the Default of Lessee within the grace period, if any, specified in such notice. The sublessee shall have a right of reimbursement and offset from and against Lessee for any such Defaults cured by the sublessee.

**13.   Default; Breach; Remedies.**

**13.1 Default; Breach.** A "**Default**" is defined as a failure by the Lessee to comply with or perform any of the terms, covenants, conditions or Rules and Regulations under this Lease. A "**Breach**" is defined as the occurrence of one or more of the following Defaults, and the failure of Lessee to cure such Default within any applicable grace period:

(a)   The abandonment of the Premises; or the vacating of the Premises without providing a commercially reasonable level of security, or where the coverage of the property insurance described in Paragraph 8.3 is jeopardized as a result thereof, or without providing reasonable assurances to minimize potential vandalism.

(b)   The failure of Lessee to make any payment of Rent or any Security Deposit required to be made by Lessee hereunder, whether to Lessor or to a third party, when due, to provide reasonable evidence of insurance or surety bond, or to fulfill any obligation under this Lease which endangers or threatens life or property, where such failure continues for a period of 3 business days following written notice to Lessee. THE ACCEPTANCE BY LESSOR OF A PARTIAL PAYMENT OF RENT OR SECURITY DEPOSIT SHALL NOT CONSTITUTE A WAIVER OF ANY OF LESSOR'S RIGHTS, INCLUDING LESSOR'S RIGHT TO RECOVER POSSESSION OF THE PREMISES.

(c)   The failure of Lessee to allow Lessor and/or its agents access to the Premises or the commission of waste, act or acts constituting public or private nuisance, and/or an illegal activity on the Premises by Lessee, where such actions continue for a period of 3 business days following written notice to Lessee. In the event that Lessee commits waste, a nuisance or an illegal activity a second time then, the Lessor may elect to treat such conduct as a non-curable Breach rather than a Default.

(d)   The failure by Lessee to provide (i) reasonable written evidence of compliance with Applicable Requirements, (ii) the service contracts, (iii) the rescission of an unauthorized assignment or subletting, (iv) an Estoppel Certificate or financial statements, (v) a requested subordination, (vi) evidence concerning any guaranty and/or Guarantor, (vii) any document requested under Paragraph 41, (viii) material safety data sheets (MSDS), or (ix) any other documentation or information which Lessor may reasonably require of Lessee under the terms of this Lease, where any such failure continues for a period of 10 days following written notice to Lessee.

(e)   A Default by Lessee as to the terms, covenants, conditions or provisions of this Lease, or of the rules adopted under Paragraph 2.9 hereof, other than those described in subparagraphs 13.1(a), (b), (c) or (d), above, where such Default continues for a period of 30 days after written notice; provided, however, that if the nature of Lessee's Default is such that more than 30 days are reasonably required for its cure, then it shall not be deemed to be a Breach if Lessee commences such cure within said 30 day period and thereafter diligently prosecutes such cure to completion.

(f)   The occurrence of any of the following events: (i) the making of any general arrangement or assignment for the benefit of creditors; (ii) becoming a "debtor" as defined in 11 U.S.C. § 101 or any successor statute thereto (unless, in the case of a petition filed against Lessee, the same is dismissed within 60 days); (iii) the appointment of a trustee or receiver to take possession of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where possession is not restored to Lessee within 30 days; or (iv) the attachment, execution or other judicial seizure of substantially all of Lessee's assets located at the Premises or of Lessee's interest in this Lease, where such seizure is not discharged within 30 days; provided, however, in the event that any provision of this subparagraph is contrary to any applicable law, such provision shall be of no force or effect, and not affect the validity of the remaining provisions.

(g)   The discovery that any financial statement of Lessee or of any Guarantor given to Lessor was materially false.

(h)   If the performance of Lessee's obligations under this Lease is guaranteed: (i) the death of a Guarantor, (ii) the termination of a Guarantor's liability with respect to this Lease other than in accordance with the terms of such guaranty, (iii) a Guarantor's becoming insolvent or the subject of a bankruptcy filing, (iv) a Guarantor's refusal to honor the guaranty, or (v) a Guarantor's breach of its guaranty obligation on an anticipatory basis, and Lessee's failure, within 60 days following written notice of any such event, to provide written alternative assurance or security, which, when coupled with the then existing resources of Lessee, equals or exceeds the combined financial resources of Lessee and the Guarantors that existed at the time of execution of this Lease.

**13.2 Remedies.** If Lessee fails to perform any of its affirmative duties or obligations, within 10 days after written notice (or in case of an emergency, without notice), Lessor may, at its option, perform such duty or obligation on Lessee's behalf, including but not limited to the obtaining of reasonably required bonds, insurance policies, or governmental licenses, permits or approvals. Lessee shall pay to Lessor an amount equal to 115% of the costs and expenses incurred by Lessor in such performance upon receipt of an invoice therefor. In the event of a Breach, Lessor may, with or without further notice or demand, and without limiting Lessor in the exercise of any right or remedy which Lessor may have by reason of such Breach:

(a)   Terminate Lessee's right to possession of the Premises by any lawful means, in which case this Lease shall terminate and Lessee shall immediately surrender possession to Lessor. In such event Lessor shall be entitled to recover from Lessee: (i) the unpaid Rent which had been earned at the time of termination; (ii) the worth at the time of award of the amount by which the unpaid rent which would have been earned after termination until the time of award exceeds the amount of such rental loss that the Lessee proves could have been reasonably avoided; (iii) the worth at the time of award of the amount by which the unpaid rent for the balance of the term after the time of award exceeds the amount of such rental loss that the Lessee proves could be reasonably avoided; and (iv) any other amount necessary to compensate Lessor for all the detriment proximately caused by the Lessee's failure to perform its obligations under this Lease or which in the ordinary course of things would be likely to result therefrom, including but not limited to the cost of recovering possession of the Premises, expenses of reletting, including necessary renovation and alteration of the Premises, reasonable attorneys' fees, and that portion of any leasing commission paid by Lessor in connection with this Lease applicable to the unexpired term of this Lease. The worth at the time of award of the amount referred to in provision (iii) of the immediately preceding sentence shall be computed by discounting such amount at the discount rate of the Federal Reserve Bank of the District within which the Premises are located at the time of award plus one percent. Efforts by Lessor to mitigate damages caused by Lessee's Breach of this Lease shall not waive Lessor's right to recover any damages to which Lessor is otherwise entitled. If termination of this Lease is obtained through the provisional remedy of unlawful detainer, Lessor shall have the right to recover in such proceeding any unpaid Rent and damages as are recoverable therein, or Lessor may reserve the right to recover all or any part thereof in a separate suit. If a notice and grace period required under Paragraph 13.1 was not previously given, a notice to pay rent or quit, or to perform or quit given to Lessee under the unlawful detainer statute shall also constitute the notice required by Paragraph 13.1. In such case, the applicable grace period required by Paragraph 13.1 and the unlawful

© 2019 AIR CRE.  All Rights Reserved.
MTN-26.30, Revised 11-25-2019

detainer statute shall run concurrently, and the failure of Lessee to cure the Default within the greater of the two such grace periods shall constitute both an unlawful detainer and a Breach of this Lease entitling Lessor to the remedies provided for in this Lease and/or by said statute.

(b)    Continue the Lease and Lessee's right to possession and recover the Rent as it becomes due, in which event Lessee may sublet or assign, subject only to reasonable limitations. Acts of maintenance, efforts to relet, and/or the appointment of a receiver to protect the Lessor's interests, shall not constitute a termination of the Lessee's right to possession.

(c)    Pursue any other remedy now or hereafter available under the laws or judicial decisions of the state wherein the Premises are located. The expiration or termination of this Lease and/or the termination of Lessee's right to possession shall not relieve Lessee from liability under any indemnity provisions of this Lease as to matters occurring or accruing during the term hereof or by reason of Lessee's occupancy of the Premises.

13.3    Inducement Recapture. Any agreement for free or abated rent or other charges, the cost of tenant improvements for Lessee paid for or performed by Lessor, or for the giving or paying by Lessor to or for Lessee of any cash or other bonus, inducement or consideration for Lessee's entering into this Lease, all of which concessions are hereinafter referred to as "Inducement Provisions," shall be deemed conditioned upon Lessee's full and faithful performance of all of the terms, covenants and conditions of this Lease. Upon Breach of this Lease by Lessee, any such Inducement Provision shall automatically be deemed deleted from this Lease and of no further force or effect, and any rent, other charge, bonus, inducement or consideration theretofore abated, given or paid by Lessor under such an Inducement Provision shall be immediately due and payable by Lessee to Lessor, notwithstanding any subsequent cure of said Breach by Lessee. The acceptance by Lessor of rent or the cure of the Breach which initiated the operation of this paragraph shall not be deemed a waiver by Lessor of the provisions of this paragraph unless specifically so stated in writing by Lessor at the time of such acceptance.

13.4    Late Charges. Lessee hereby acknowledges that late payment by Lessee of Rent will cause Lessor to incur costs not contemplated by this Lease, the exact amount of which will be extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges, and late charges which may be imposed upon Lessor by any Lender. Accordingly, if any Rent shall not be received by Lessor within 5 days after such amount shall be due, then, without any requirement for notice to Lessee, Lessee shall immediately pay to Lessor a one-time late charge equal to 10% of each such overdue amount or $100, whichever is greater. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Lessor will incur by reason of such late payment. Acceptance of such late charge by Lessor shall in no event constitute a waiver of Lessee's Default or Breach with respect to such overdue amount, nor prevent the exercise of any of the other rights and remedies granted hereunder. In the event that a late charge is payable hereunder, whether or not collected, for 3 consecutive installments of Base Rent, then notwithstanding any provision of this Lease to the contrary, Base Rent shall, at Lessor's option, become due and payable quarterly in advance.

13.5    Interest. Any monetary payment due Lessor hereunder, other than late charges, not received by Lessor, when due shall bear interest from the 31st day after it was due. The interest ("Interest") charged shall be computed at the rate of 10% per annum but shall not exceed the maximum rate allowed by law. Interest is payable in addition to the potential late charge provided for in Paragraph 13.4.

13.6    Breach by Lessor.

(a)    Notice of Breach. Lessor shall not be deemed in breach of this Lease unless Lessor fails within a reasonable time to perform an obligation required to be performed by Lessor. For purposes of this Paragraph, a reasonable time shall in no event be less than 30 days after receipt by Lessor, and any Lender whose name and address shall have been furnished to Lessee in writing for such purpose, of written notice specifying wherein such obligation of Lessor has not been performed; provided, however, that if the nature of Lessor's obligation is such that more than 30 days are reasonably required for its performance, then Lessor shall not be in breach if performance is commenced within such 30 day period and thereafter diligently pursued to completion.

(b)    Performance by Lessee on Behalf of Lessor. In the event that neither Lessor nor Lender cures said breach within 30 days after receipt of said notice, or if having commenced said cure they do not diligently pursue it to completion, then Lessee may elect to cure such breach at Lessee's expense and offset from Rent the actual and reasonable cost to perform such cure, provided however, that such offset shall not exceed an amount equal to the greater of one month's Base Rent or the Security Deposit, reserving Lessee's right to reimbursement from Lessor for any such expense in excess of such offset. Lessee shall document the cost of said cure and supply said documentation to Lessor.

14.    Condemnation. If the Premises or any portion thereof are taken under the power of eminent domain or sold under the threat of the exercise of said power (collectively "Condemnation"), this Lease shall terminate as to the part taken as of the date the condemning authority takes title or possession, whichever first occurs. If more than 10% of the floor area of the Unit, or more than 25% of the parking spaces is taken by Condemnation, Lessee may, at Lessee's option, to be exercised in writing within 10 days after Lessor shall have given Lessee written notice of such taking (or in the absence of such notice, within 10 days after the condemning authority shall have taken possession) terminate this Lease as of the date the condemning authority takes such possession. If Lessee does not terminate this Lease in accordance with the foregoing, this Lease shall remain in full force and effect as to the portion of the Premises remaining, except that the Base Rent shall be reduced in proportion to the reduction in utility of the Premises caused by such Condemnation. Condemnation awards and/or payments shall be the property of Lessor, whether such award shall be made as compensation for diminution in value of the leasehold, the value of the part taken, or for severance damages; provided, however, that Lessee shall be entitled to any compensation paid by the condemnor for Lessee's relocation expenses, loss of business goodwill and/or Trade Fixtures, without regard to whether or not this Lease is terminated pursuant to the provisions of this Paragraph. All Alterations and Utility Installations made to the Premises by Lessee, for purposes of Condemnation only, shall be considered the property of the Lessee and Lessee shall be entitled to any and all compensation which is payable therefor. In the event that this Lease is not terminated by reason of the Condemnation, Lessor shall repair any damage to the Premises caused by such Condemnation.

15.    Brokerage Fees.

15.1    Additional Commission. In addition to the payments owed pursuant to Paragraph 1.10 above, Lessor agrees that: (a) if Lessee exercises any Option, (b) if Lessee or anyone affiliated with Lessee acquires from Lessor any rights to the Premises or other premises owned by Lessor and located within the Project, (c) if Lessee remains in possession of the Premises, with the consent of Lessor, after the expiration of this Lease, or (d) if Base Rent is increased, whether by agreement or operation of an escalation clause herein, then, Lessor shall pay Brokers a fee in accordance with the fee schedule of the Brokers in effect at the time the Lease was executed. The provisions of this paragraph are intended to supersede the provisions of any earlier agreement to the contrary.

15.2    Assumption of Obligations. Any buyer or transferee of Lessor's interest in this Lease shall be deemed to have assumed Lessor's obligation hereunder. Brokers shall be third party beneficiaries of the provisions of Paragraphs 1.10, 15, 22 and 31. If Lessor fails to pay to Brokers any amounts due as and for brokerage fees pertaining to this Lease when due, then such amounts shall accrue interest. In addition, if Lessor fails to pay any amounts to Lessee's Broker when due, Lessee's Broker may send written notice to Lessor and Lessee of such failure and if Lessor fails to pay such amounts within 10 days after said notice, Lessee shall pay said monies to its Broker and offset such amounts against Rent. In addition, Lessee's Broker shall be deemed to be a third party beneficiary of any commission agreement entered into by and/or between Lessor and Lessor's Broker for the limited purpose of collecting any brokerage fee owed.

15.3    Representations and Indemnities of Broker Relationships. Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, broker, agent or finder (other than the Brokers and Agents, if any) in connection with this Lease, and that no one other than said named Brokers and

INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

Agents is entitled to any commission or finder's fee in connection herewith. Lessee and Lessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

16.  **Estoppel Certificates.**
(a)  Each Party (as "Responding Party") shall within 10 days after written notice from the other Party (the "Requesting Party") execute, acknowledge and deliver to the Requesting Party a statement in writing in form similar to the then most current "Estoppel Certificate" form published BY AIR CRE, plus such additional information, confirmation and/or statements as may be reasonably requested by the Requesting Party.
(b)  If the Responding Party shall fail to execute or deliver the Estoppel Certificate within such 10 day period, the Requesting Party may execute an Estoppel Certificate stating that: (i) the Lease is in full force and effect without modification except as may be represented by the Requesting Party, (ii) there are no uncured defaults in the Requesting Party's performance, and (iii) if Lessor is the Requesting Party, not more than one month's rent has been paid in advance. Prospective purchasers and encumbrancers may rely upon the Requesting Party's Estoppel Certificate, and the Responding Party shall be estopped from denying the truth of the facts contained in said Certificate. In addition, Lessee acknowledges that any failure on its part to provide such an Estoppel Certificate will expose Lessor to risks and potentially cause Lessor to incur costs not contemplated by this Lease, the extent of which will be extremely difficult to ascertain. Accordingly, should the Lessee fail to execute and/or deliver a requested Estoppel Certificate in a timely fashion the monthly Base Rent shall be automatically increased, without any requirement for notice to Lessee, by an amount equal to 10% of the then existing Base Rent or $100, whichever is greater for remainder of the Lease. The Parties agree that such increase in Base Rent represents fair and reasonable compensation for the additional risk/costs that Lessor will incur by reason of Lessee's failure to provide the Estoppel Certificate. Such increase in Base Rent shall in no event constitute a waiver of Lessee's Default or Breach with respect to the failure to provide the Estoppel Certificate nor prevent the exercise of any of the other rights and remedies granted hereunder.
(c)  If Lessor desires to finance, refinance, or sell the Premises, or any part thereof, Lessee and all Guarantors shall within 10 days after written notice from Lessor deliver to any potential lender or purchaser designated by Lessor such financial statements as may be reasonably required by such lender or purchaser, including but not limited to Lessee's financial statements for the past 3 years. All such financial statements shall be received by Lessor and such lender or purchaser in confidence and shall be used only for the purposes herein set forth.

17.  **Definition of Lessor.** The term "Lessor" as used herein shall mean the owner or owners at the time in question of the fee title to the Premises, or, if this is a sublease, of the Lessee's interest in the prior lease. In the event of a transfer of Lessor's title or interest in the Premises or this Lease, Lessor shall deliver to the transferee or assignee (in cash or by credit) any unused Security Deposit held by Lessor. Upon such transfer or assignment and delivery of the Security Deposit, as aforesaid, the prior Lessor shall be relieved of all liability with respect to the obligations and/or covenants under this Lease thereafter to be performed by the Lessor. Subject to the foregoing, the obligations and/or covenants in this Lease to be performed by the Lessor shall be binding only upon the Lessor as hereinabove defined.

18.  **Severability.** The invalidity of any provision of this Lease, as determined by a court of competent jurisdiction, shall in no way affect the validity of any other provision hereof.

19.  **Days.** Unless otherwise specifically indicated to the contrary, the word "days" as used in this Lease shall mean and refer to calendar days.

20.  **Limitation on Liability.** The obligations of Lessor under this Lease shall not constitute personal obligations of Lessor, or its partners, members, directors, officers or shareholders, and Lessee shall look to the Premises, and to no other assets of Lessor, for the satisfaction of any liability of Lessor with respect to this Lease, and shall not seek recourse against Lessor's partners, members, directors, officers or shareholders, or any of their personal assets for such satisfaction.

21.  **Time of Essence.** Time is of the essence with respect to the performance of all obligations to be performed or observed by the Parties under this Lease.

22.  **No Prior or Other Agreements; Broker Disclaimer.** This Lease contains all agreements between the Parties with respect to any matter mentioned herein, and no other prior or contemporaneous agreement or understanding shall be effective. Lessor and Lessee each represents and warrants to the Brokers that it has made, and is relying solely upon, its own investigation as to the nature, quality, character and financial responsibility of the other Party to this Lease and as to the use, nature, quality and character of the Premises. Brokers have no responsibility with respect thereto or with respect to any default or breach hereof by either Party.

23.  **Notices.**
23.1  Notice Requirements. All notices required or permitted by this Lease or applicable law shall be in writing and may be delivered in person (by hand or by courier) or may be sent by regular, certified or registered mail or U.S. Postal Service Express Mail, with postage prepaid, or by facsimile transmission, or by email, and shall be deemed sufficiently given if served in a manner specified in this Paragraph 23. The addresses noted adjacent to a Party's signature on this Lease shall be that Party's address for delivery or mailing of notices. Either Party may by written notice to the other specify a different address for notice, except that upon Lessee's taking possession of the Premises, the Premises shall constitute Lessee's address for notice. A copy of all notices to Lessor shall be concurrently transmitted to such party or parties at such addresses as Lessor may from time to time hereafter designate in writing.
23.2  Date of Notice. Any notice sent by registered or certified mail, return receipt requested, shall be deemed given on the date of delivery shown on the receipt card, or if no delivery date is shown, the postmark thereon. If sent by regular mail the notice shall be deemed given 72 hours after the same is addressed as required herein and mailed with postage prepaid. Notices delivered by United States Express Mail or overnight courier that guarantees next day delivery shall be deemed given 24 hours after delivery of the same to the Postal Service or courier. Notices delivered by hand, or transmitted by facsimile transmission or by email shall be deemed delivered upon actual receipt. If notice is received on a Saturday, Sunday or legal holiday, it shall be deemed received on the next business day.

23.3  Options. Notwithstanding the foregoing, in order to exercise any Options (see paragraph 39), the Notice must be sent by Certified Mail (return receipt requested), Express Mail (signature required), courier (signature required) or some other methodology that provides a receipt establishing the date the notice was received by the Lessor.

24.  **Waivers.**
(a)  No waiver by Lessor of the Default or Breach of any term, covenant or condition hereof by Lessee, shall be deemed a waiver of any other term, covenant or condition hereof, or of any subsequent Default or Breach by Lessee of the same or of any other term, covenant or condition hereof. Lessor's consent to, or approval of, any act shall not be deemed to render unnecessary the obtaining of Lessor's consent to, or approval of, any subsequent or similar act by Lessee, or be construed as the basis of an estoppel to enforce the provision or provisions of this Lease requiring such consent.
(b)  The acceptance of Rent by Lessor shall not be a waiver of any Default or Breach by Lessee. Any payment by Lessee may be accepted by Lessor on account of monies or damages due Lessor, notwithstanding any qualifying statements or conditions made by Lessee in connection therewith, which such statements and/or conditions shall be of no force or effect whatsoever unless specifically agreed to in writing by Lessor at or before the time of deposit of such payment.

INITIALS                                                        INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

(c)  THE PARTIES AGREE THAT THE TERMS OF THIS LEASE SHALL GOVERN WITH REGARD TO ALL MATTERS RELATED THERETO AND HEREBY WAIVE THE PROVISIONS OF ANY PRESENT OR FUTURE STATUTE TO THE EXTENT THAT SUCH STATUTE IS INCONSISTENT WITH THIS LEASE.

**25. Disclosures Regarding The Nature of a Real Estate Agency Relationship.**

(a)  When entering into a discussion with a real estate agent regarding a real estate transaction, a Lessor or Lessee should from the outset understand what type of agency relationship or representation it has with the agent or agents in the transaction. Lessor and Lessee acknowledge being advised by the Brokers in this transaction, as follows:

(i)  _Lessor's Agent._  A Lessor's agent under a listing agreement with the Lessor acts as the agent for the Lessor only. A Lessor's agent or subagent has the following affirmative obligations: _To the Lessor:_  A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Lessor. _To the Lessee and the Lessor:_  (a) Diligent exercise of reasonable skills and care in performance of the agent's duties. (b) A duty of honest and fair dealing and good faith. (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(ii)  _Lessee's Agent._  An agent can agree to act as agent for the Lessee only. In these situations, the agent is not the Lessor's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Lessor. An agent acting only for a Lessee has the following affirmative obligations. _To the Lessee:_  A fiduciary duty of utmost care, integrity, honesty, and loyalty in dealings with the Lessee. _To the Lessee and the Lessor:_  (a) Diligent exercise of reasonable skills and care in performance of the agent's duties. (b) A duty of honest and fair dealing and good faith. (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the Parties. An agent is not obligated to reveal to either Party any confidential information obtained from the other Party which does not involve the affirmative duties set forth above.

(iii)  _Agent Representing Both Lessor and Lessee._  A real estate agent, either acting directly or through one or more associate licenses, can legally be the agent of both the Lessor and the Lessee in a transaction, but only with the knowledge and consent of both the Lessor and the Lessee. In a dual agency situation, the agent has the following affirmative obligations to both the Lessor and the Lessee: (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either Lessor or the Lessee. (b) Other duties to the Lessor and the Lessee as stated above in subparagraphs (i) or (ii). In representing both Lessor and Lessee, the agent may not, without the express permission of the respective Party, disclose to the other Party confidential information, including, but not limited to, facts relating to either Lessee's or Lessor's financial position, motivations, bargaining position, or other personal information that may impact rent, including Lessor's willingness to accept a rent less than the listing rent or Lessee's willingness to pay rent greater than the rent offered. The above duties of the agent in a real estate transaction do not relieve a Lessor or Lessee from the responsibility to protect their own interests. Lessor and Lessee should carefully read all agreements to assure that they adequately express their understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional. Both Lessor and Lessee should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

(b)  Brokers have no responsibility with respect to any default or breach hereof by either Party. The Parties agree that no lawsuit or other legal proceeding involving any breach of duty, error or omission relating to this Lease may be brought against Broker more than one year after the Start Date and that the liability (including court costs and attorneys' fees), of any Broker with respect to any such lawsuit and/or legal proceeding shall not exceed the fee received by such Broker pursuant to this Lease; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker.

(c)  Lessor and Lessee agree to identify to Brokers as "Confidential" any communication or information given Brokers that is considered by such Party to be confidential.

**26. No Right To Holdover.** Lessee has no right to retain possession of the Premises or any part thereof beyond the expiration or termination of this Lease. In the event that Lessee holds over, then the Base Rent shall be increased to 150% of the Base Rent applicable immediately preceding the expiration or termination. Holdover Base Rent shall be calculated on monthly basis. Nothing contained herein shall be construed as consent by Lessor to any holding over by Lessee.

**27. Cumulative Remedies.** No remedy or election hereunder shall be deemed exclusive but shall, wherever possible, be cumulative with all other remedies at law or in equity.

**28. Covenants and Conditions; Construction of Agreement.** All provisions of this Lease to be observed or performed by Lessee are both covenants and conditions. In construing this Lease, all headings and titles are for the convenience of the Parties only and shall not be considered a part of this Lease. Whenever required by the context, the singular shall include the plural and vice versa. This Lease shall not be construed as if prepared by one of the Parties, but rather according to its fair meaning as a whole, as if both Parties had prepared it.

**29. Binding Effect; Choice of Law.** This Lease shall be binding upon the Parties, their personal representatives, successors and assigns and be governed by the laws of the State in which the Premises are located. Any litigation between the Parties hereto concerning this Lease shall be initiated in the county in which the Premises are located. Signatures to this Lease accomplished by means of electronic signature or similar technology shall be legal and binding.

**30. Subordination; Attornment; Non-Disturbance.**

30.1 Subordination. This Lease and any Option granted hereby shall be subject and subordinate to any ground lease, mortgage, deed of trust, or other hypothecation or security device (collectively, "Security Device"), now or hereafter placed upon the Premises, to any and all advances made on the security thereof, and to all renewals, modifications, and extensions thereof. Lessee agrees that the holders of any such Security Devices (in this Lease together referred to as "Lender") shall have no liability or obligation to perform any of the obligations of Lessor under this Lease. Any Lender may elect to have this Lease and/or any Option granted hereby superior to the lien of its Security Device by giving written notice thereof to Lessee, whereupon this Lease and such Options shall be deemed prior to such Security Device, notwithstanding the relative dates of the documentation or recordation thereof.

30.2 Attornment. In the event that Lessor transfers title to the Premises, or the Premises are acquired by another upon the foreclosure or termination of a Security Device to which this Lease is subordinated (i) Lessee shall, subject to the non-disturbance provisions of Paragraph 30.3, attorn to such new owner, and upon request, enter into a new lease, containing all of the terms and provisions of this Lease, with such new owner for the remainder of the term hereof, or, at the election of the new owner, this Lease will automatically become a new lease between Lessee and such new owner, and (ii) Lessor shall thereafter be relieved of any further obligations hereunder and such new owner shall assume all of Lessor's obligations, except that such new owner shall not: (a) be liable for any act or omission of any prior lessor or with respect to events occurring prior to acquisition of ownership; (b) be subject to any offsets or defenses which Lessee might have against any prior lessor, (c) be bound by prepayment of more than one month's rent, or (d) be liable for the return of any security deposit paid to any prior lessor which was not paid or credited to such new owner.

INITIALS _____    INITIALS _____

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

30.3 **Non-Disturbance.** With respect to Security Devices entered into by Lessor after the execution of this Lease, Lessee's subordination of this Lease shall be subject to receiving a commercially reasonable non-disturbance agreement (a "**Non-Disturbance Agreement**") from the Lender which Non-Disturbance Agreement provides that Lessee's possession of the Premises, and this Lease, including any options to extend the term hereof, will not be disturbed so long as Lessee is not in Breach hereof and attorns to the record owner of the Premises. Further, within 60 days after the execution of this Lease, Lessor shall, if requested by Lessee, use its commercially reasonable efforts to obtain a Non-Disturbance Agreement from the holder of any pre-existing Security Device which is secured by the Premises. In the event that Lessor is unable to provide the Non-Disturbance Agreement within said 60 days, then Lessee may, at Lessee's option, directly contact Lender and attempt to negotiate for the execution and delivery of a Non-Disturbance Agreement.

30.4 **Self-Executing.** The agreements contained in this Paragraph 30 shall be effective without the execution of any further documents; provided, however, that, upon written request from Lessor or a Lender in connection with a sale, financing or refinancing of the Premises, Lessee and Lessor shall execute such further writings as may be reasonably required to separately document any subordination, attornment and/or Non-Disturbance Agreement provided for herein.

**31. Attorneys' Fees.** If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term, "**Prevailing Party**" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred. In addition, Lessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach ($200 is a reasonable minimum per occurrence for such services and consultation).

**32.** **Lessor's Access; Showing Premises; Repairs.** Lessor and Lessor's agents shall have the right to enter the Premises at any time, in the case of an emergency, and otherwise at reasonable times after reasonable prior notice for the purpose of showing the same to prospective purchasers, lenders, or tenants, and making such alterations, repairs, improvements or additions to the Premises as Lessor may deem necessary or desirable and the erecting, using and maintaining of utilities, services, pipes and conduits through the Premises and/or other premises as long as there is no material adverse effect on Lessee's use of the Premises. All such activities shall be without abatement of rent or liability to Lessee.

**33.** **Auctions.** Lessee shall not conduct, nor permit to be conducted, any auction upon the Premises without Lessor's prior written consent. Lessor shall not be obligated to exercise any standard of reasonableness in determining whether to permit an auction.

**34.** **Signs.** Lessor may place on the Premises ordinary "For Sale" signs at any time and ordinary "For Lease" signs during the last 6 months of the term hereof. Except for ordinary "For Sublease" signs which may be placed only on the Premises, Lessee shall not place any sign upon the Project without Lessor's prior written consent. All signs must comply with all Applicable Requirements.

**35.** **Termination; Merger.** Unless specifically stated otherwise in writing by Lessor, the voluntary or other surrender of this Lease by Lessee, the mutual termination or cancellation hereof, or a termination hereof by Lessor for Breach by Lessee, shall automatically terminate any sublease or lesser estate in the Premises; provided, however, that Lessor may elect to continue any one or all existing subtenancies. Lessor's failure within 10 days following any such event to elect to the contrary by written notice to the holder of any such lesser interest, shall constitute Lessor's election to have such event constitute the termination of such interest.

**36.** **Consents.** All requests for consent shall be in writing. Except as otherwise provided herein, wherever in this Lease the consent of a Party is required to an act by or for the other Party, such consent shall not be unreasonably withheld or delayed. Lessor's actual reasonable costs and expenses (including but not limited to architects', attorneys', engineers' and other consultants' fees) incurred in the consideration of, or response to, a request by Lessee for any Lessor consent, including but not limited to consents to an assignment, a subletting or the presence or use of a Hazardous Substance, shall be paid by Lessee upon receipt of an invoice and supporting documentation therefor. Lessor's consent to any act, assignment or subletting shall not constitute an acknowledgment that no Default or Breach by Lessee of this Lease exists, nor shall such consent be deemed a waiver of any then existing Default or Breach, except as may be otherwise specifically stated in writing by Lessor at the time of such consent. The failure to specify herein any particular condition to Lessor's consent shall not preclude the imposition by Lessor at the time of consent of such further or other conditions as are then reasonable with reference to the particular matter for which consent is being given. In the event that either Party disagrees with any determination made by the other hereunder and reasonably requests the reasons for such determination, the determining party shall furnish its reasons in writing and in reasonable detail within 10 business days following such request.

**37.** **Guarantor.**

37.1 **Execution.** The Guarantors, if any, shall each execute a guaranty in the form most recently published BY AIR CRE.

37.2 **Default.** It shall constitute a Default of the Lessee if any Guarantor fails or refuses, upon request to provide: (a) evidence of the execution of the guaranty, including the authority of the party signing on Guarantor's behalf to obligate Guarantor, and in the case of a corporate Guarantor, a certified copy of a resolution of its board of directors authorizing the making of such guaranty, (b) current financial statements, (c) an Estoppel Certificate, or (d) written confirmation that the guaranty is still in effect.

**38.** **Quiet Possession.** Subject to payment by Lessee of the Rent and performance of all of the covenants, conditions and provisions on Lessee's part to be observed and performed under this Lease, Lessee shall have quiet possession and quiet enjoyment of the Premises during the term hereof.

**39.** **Options.** If Lessee is granted any option, as defined below, then the following provisions shall apply.

39.1 **Definition.** "Option" shall mean: (a) the right to extend or reduce the term of or renew this Lease or to extend or reduce the term of or renew any lease that Lessee has on other property of Lessor; (b) the right of first refusal or first offer to lease either the Premises or other property of Lessor; (c) the right to purchase, the right of first offer to purchase or the right of first refusal to purchase the Premises or other property of Lessor.

39.2 **Options Personal To Original Lessee.** Any Option granted to Lessee in this Lease is personal to the original Lessee, and cannot be assigned or exercised by anyone other than said original Lessee and only while the original Lessee is in full possession of the Premises and, if requested by Lessor, with Lessee certifying that Lessee has no intention of thereafter assigning or subletting.

39.3 **Multiple Options.** In the event that Lessee has any multiple Options to extend or renew this Lease, a later Option cannot be exercised unless the prior Options have been validly exercised.

39.4 **Effect of Default on Options.**

(a) Lessee shall have no right to exercise an Option: (i) during the period commencing with the giving of any notice of Default and continuing until said Default is cured, (ii) during the period of time any Rent is unpaid (without regard to whether notice thereof is given Lessee), (iii) during the time Lessee is in Breach of

INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

this Lease, or (iv) in the event that Lessee has been given 3 or more notices of separate Default, whether or not the Defaults are cured, during the 12 month period immediately preceding the exercise of the Option.

(b)    The period of time within which an Option may be exercised shall not be extended or enlarged by reason of Lessee's inability to exercise an Option because of the provisions of Paragraph 39.4(a).

(c)    An Option shall terminate and be of no further force or effect, notwithstanding Lessee's due and timely exercise of the Option, if, after such exercise and prior to the commencement of the extended term or completion of the purchase, (i) Lessee fails to pay Rent for a period of 30 days after such Rent becomes due (without any necessity of Lessor to give notice thereof), or (ii) if Lessee commits a Breach of this Lease.

40.    Security Measures. Lessee hereby acknowledges that the Rent payable to Lessor hereunder does not include the cost of guard service or other security measures, and that Lessor shall have no obligation whatsoever to provide same. Lessee assumes all responsibility for the protection of the Premises, Lessee, its agents and invitees and their property from the acts of third parties.

41.    Reservations. Lessor reserves the right: (i) to grant, without the consent or joinder of Lessee, such easements, rights and dedications that Lessor deems necessary, (ii) to cause the recordation of parcel maps and restrictions, and (iii) to create and/or install new utility raceways, so long as such easements, rights, dedications, maps, restrictions, and utility raceways do not unreasonably interfere with the use of the Premises by Lessee. Lessee agrees to sign any documents reasonably requested by Lessor to effectuate such rights.

42.    Performance Under Protest. If at any time a dispute shall arise as to any amount or sum of money to be paid by one Party to the other under the provisions hereof, the Party against whom the obligation to pay the money is asserted shall have the right to make payment "under protest" and such payment shall not be regarded as a voluntary payment and there shall survive the right on the part of said Party to institute suit for recovery of such sum. If it shall be adjudged that there was no legal obligation on the part of said Party to pay such sum or any part thereof, said Party shall be entitled to recover such sum or so much thereof as it was not legally required to pay. A Party who does not initiate suit for the recovery of sums paid "under protest" within 6 months shall be deemed to have waived its right to protest such payment.

43.    Authority; Multiple Parties; Execution.

(a)    If either Party hereto is a corporation, trust, limited liability company, partnership, or similar entity, each individual executing this Lease on behalf of such entity represents and warrants that he or she is duly authorized to execute and deliver this Lease on its behalf. Each Party shall, within 30 days after request, deliver to the other Party satisfactory evidence of such authority.

(b)    If this Lease is executed by more than one person or entity as "Lessee", each such person or entity shall be jointly and severally liable hereunder. It is agreed that any one of the named Lessees shall be empowered to execute any amendment to this Lease, or other document ancillary thereto and bind all of the named Lessees, and Lessor may rely on the same as if all of the named Lessees had executed such document.

(c)    This Lease may be executed by the Parties in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

44.    Conflict. Any conflict between the printed provisions of this Lease and the typewritten or handwritten provisions shall be controlled by the typewritten or handwritten provisions.

45.    Offer. Preparation of this Lease by either party or their agent and submission of same to the other Party shall not be deemed an offer to lease to the other Party. This Lease is not intended to be binding until executed and delivered by all Parties hereto.

46.    Amendments. This Lease may be modified only in writing, signed by the Parties in interest at the time of the modification. As long as they do not materially change Lessee's obligations hereunder, Lessee agrees to make such reasonable non-monetary modifications to this Lease as may be reasonably required by a Lender in connection with the obtaining of normal financing or refinancing of the Premises.

47.    Waiver of Jury Trial. THE PARTIES HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING INVOLVING THE PROPERTY OR ARISING OUT OF THIS AGREEMENT.

48.    Arbitration of Disputes. An Addendum requiring the Arbitration of all disputes between the Parties and/or Brokers arising out of this Lease ☐ is ☑ is not attached to this Lease.

49.    Accessibility; Americans with Disabilities Act.

(a)    The Premises:

☑ have not undergone an inspection by a Certified Access Specialist (CASp). Note: A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection, the payment of the fee for the CASp inspection, and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises.

☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises met all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq. Lessee acknowledges that it received a copy of the inspection report at least 48 hours prior to executing this Lease and agrees to keep such report confidential.

☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises did not meet all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq. Lessee acknowledges that it received a copy of the inspection report at least 48 hours prior to executing this Lease and agrees to keep such report confidential except as necessary to complete repairs and corrections of violations of construction-related accessibility standards.

In the event that the Premises have been issued an inspection report by a CASp the Lessor shall provide a copy of the disability access inspection certificate to Lessee within 7 days of the execution of this Lease.

(b)    Since compliance with the Americans with Disabilities Act (ADA) and other state and local accessibility statutes are dependent upon Lessee's specific

INITIALS _____

INITIALS _____

© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

Last Edited: 7/15/2022 7:44 AM
Page 16 of 18

DocuSign Envelope ID: 07F8CB40-F2D4-42!   3C-F6BE88B93F5B

use of the Premises, Lessor makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation. In the event that Lessee's use of the Premises requires modifications or additions to the Premises in order to be in compliance with ADA or other accessibility statutes, Lessee agrees to make any such necessary modifications and/or additions at Lessee's expense.

LESSOR AND LESSEE HAVE CAREFULLY READ AND REVIEWED THIS LEASE AND EACH TERM AND PROVISION CONTAINED HEREIN, AND BY THE EXECUTION OF THIS LEASE SHOW THEIR INFORMED AND VOLUNTARY CONSENT THERETO. THE PARTIES HEREBY AGREE THAT, AT THE TIME THIS LEASE IS EXECUTED, THE TERMS OF THIS LEASE ARE COMMERCIALLY REASONABLE AND EFFECTUATE THE INTENT AND PURPOSE OF LESSOR AND LESSEE WITH RESPECT TO THE PREMISES.

ATTENTION: NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS LEASE OR THE TRANSACTION TO WHICH IT RELATES. THE PARTIES ARE URGED TO:
1.    SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS LEASE.
2.    RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES. SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO: THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PREMISES, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, COMPLIANCE WITH THE AMERICANS WITH DISABILITIES ACT AND THE SUITABILITY OF THE PREMISES FOR LESSEE'S INTENDED USE.

WARNING: IF THE PREMISES ARE LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THE LEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PREMISES ARE LOCATED.

The parties hereto have executed this Lease at the place and on the dates specified above their respective signatures.

Executed at: _Beverly Hills, CA_          Executed at: _PALM DESERT, CA_
On: _7-31-2022_                            On: _July 21, 2022_

By LESSOR:                                 By LESSEE:
THE COLONNADE ON EL PASEO, LP              NICHOLAS LAWRENCE DESIGN ASSOCIATES LLC dba MODERN
                                           HACIENDA

By: _____                                  By: _____
Name Printed: _LAURA AFLALO_               Name Printed: _NICHOLAS HERTNECK_
Title: _AUTHORIZED SIGNATORY_              Title: _MEMBER OF LLC_
Phone: _310-286-0117_                      Phone: _310 854 2805_
Fax: _____                                 Fax: _N.A._
Email: _____                               Email: _NICHOLASG NICHOLAS LAWRENCE DESIGN.com_

By: _____                                  By: _____
Name Printed: _____                        Name Printed: _LAWRENCE LAZZARO_
Title: _____                               Title: _MEMBER OF LLC_
Phone: _____                               Phone: _310. 854. 2575_
Fax: _____                                 Fax: _N/A_
Email: _____                               Email: _LAWRENCE@NICHOLASLAWRENCEDESIGN.COM_

Address: _421 S. BEVERLY DRIVE, SUITE 500, BEVERLY HILLS, CA_   Address: _816 INVERNESS DRIVE, RANCHO MIRAGE, CA 92270_
_90212_                                                         Federal ID No.: _47 - 1363638_
Federal ID No.: _____

BROKER                                     BROKER

_____                                      _____

Attn: _____                                Attn: _____
Title: _____                               Title: _____

Address: _____                             Address: _____
Phone: _____                               Phone: _____
Fax: _____                                 Fax: _____
Email: _____                               Email: _____
Federal ID No.: _____                      Federal ID No.: _____
Broker DRE License #: _____                Broker DRE License #: _____
Agent DRE License #: _____                 Agent DRE License #: _____

INITIALS                                   INITIALS

© 2019 AIR CRE.  All Rights Reserved.                          Last Edited: 7/15/2022 7:44 AM
MTN-26.30, Revised 11-25-2019                                  Page 17 of 18

AIR CRE * https://www.aircre.com * 213-687-8777 * contracts@aircre.com
NOTICE: No part of these works may be reproduced in any form without permission in writing.

INITIALS
© 2019 AIR CRE. All Rights Reserved.
MTN-26.30, Revised 11-25-2019

INITIALS

## ADDENDUM TO STANDARD LEASE

THIS ADDENDUM TO STANDARD LEASE ("Addendum") is attached to and made a part of that certain printed form Standard Lease ("Lease") dated June 13, 2022, entered into by and between THE COLONNADE ON EL PASEO, L.P., a California limited partnership ("Lessor"), and Nicholas Lawrence Design Associates LLC dba Modern Hacienda ("Lessee"), covering the premises commonly known as 73- 399 El Paseo Drive, Suites 101 & 102, Palm Desert, California 92260 ("Premises"). The promises, covenants, agreements and declarations made and set forth herein are intended to, and shall, have the same force and effect as if set forth at length in the body of the Lease. To the extent that any terms or provisions of this Addendum are inconsistent with any terms or provisions of the Lease, the terms and provisions of this Addendum shall prevail and control for all purposes. All capitalized terms used in the Addendum shall have the meanings assigned to them in the Lease, unless otherwise specified in the Addendum. Notwithstanding anything to the contrary contained in the Lease, the Lease is addended, modified, and amended as follows:

50. The parties specifically acknowledge that the Premises is specifically leased "AS-IS, WHERE-IS". Lessee is authorized to use the Premises provided in this Lease. Provided, however, that Lessor makes no warranties or representations as to the condition of the Premises, the systems servicing the Premises, or the equipment therein including without limitation the doors, light fixtures, flooring and other improvements located therein, or the suitability of the Premises or the equipment therein for the use to which Lessee may employ. Lessee assumes full and complete responsibility for the inspection and repair of the Premises and the equipment and the maintenance thereof during the Lease, Lessee shall hold Lessor free and harmless from all liability in connection with the use of the Premises and the equipment located thereon, and shall indemnify Lessor from liability, from any and all claims arising out of the use and occupancy of said Premises and equipment.

51. Notwithstanding anything to the contrary, Lessee may remove and replace the existing trade fixtures in the Premises such as the cabinets and flooring provided that such removal and replacement work are performed by licensed and insured contractor(s) and such work are permitted by the proper local and state governmental agencies. Any other work to be done by Lessee in the Premises shall be pre-approved in writing by Lessor. Lessor's approval shall not be unreasonably withheld.

52. It is understood and agreed that Lessor is granting Lessee free Base Rent and Lessee's Share of Common Area Operating Expenses for the period beginning July 1, 2022 and ending October 31, 2022.

53. Notwithstanding anything to the contrary, Lessor and Lessee hereby agree, acknowledge and understand, pursuant to and in accordance with paragraph 4.2(d) of the Lease, until further notice from Lessor, Lessee shall pay Two Thousand Sixty-One Dollars and Fifty Cents ($2,061.50) per month as the current estimated monthly amount of Lessee's Share of Common Area Operating Expenses.

54. At any time prior to nine (9) months before the expiration of the original term of the Lease, in the event that Lessor, decides to renovate a substantial portion of the Premises, Lessor may, upon six (6) months' written notice to Lessee, terminate Lessee's Option to Extend as described in Paragraph 57 of this Lease. Lessor shall then pay Lessee ten thousand dollars ($10,000.00) as the Option termination fee, payable upon Lessee vacating the Premises at the end of the original term of the Lease.

55.    Notwithstanding anything to the contrary, Lessor and Lessee hereby agree, acknowledge and understand, although Lessor's measurement indicated the Premises is Two Thousand Nine Hundred Forty-Five (2,945) square feet inside ("Lessor's Measurement"), the actual size of the Premises may differ. Regardless of any such difference between Lessor's Measurement and the actual size of the Premises, the parties hereby agree and stipulate to Two Thousand Nine Hundred Forty-Five (2,945) square feet as the agreed-upon size of the Premises for calculating the amount of Base Rent and Lessee's Share of Common Area Expenses. The Parties also agree to use the size of Forty-One Thousand and Fifty-Seven (41,057) square feet as the stipulated and agreed-upon size of the Shopping Center for calculating Lessee's Share of Common Area Operating Expense. The Parties further agree that, regardless of whether the Premises is larger or smaller than Two Thousand Nine Hundred Forty-Five (2,945) square feet in size, or the Shopping Center is larger or smaller than Forty-One Thousand and Fifty-Seven (41,057) square feet in size; the Base Rent, Lessee's Share of Common Area Operating Expense, and any other charges to be paid by Lessee, based on size of the Premises and/or Shopping Center, shall not be adjusted, or subject to adjustment, based thereon or as a result thereof.

56.    Miscellaneous.

(a)    The term "Lease Year" shall mean each consecutive twelve (12) month period during this Term commencing on (a) the Commencement Date if the Commencement Date falls on the first (1st) day of a calendar month or (b) the first (1st) day of the calendar month subsequent to the Commencement Date if the Commencement Date does not fall on the first (1st) day of a calendar month.

(b)    Notwithstanding anything to the contrary, Lessee and Lessor each represent and warrant to the other that it has had no dealings with any person, firm, real estate broker or finder in connection with this Lease other than the Brokers and Agents identified in Section 1.10 of the Lease (collectively, "Broker"), and that no Broker is entitled to any commission or finder's fee in connection herewith. Lessee and Lessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any Broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses and attorneys' fees reasonably incurred with respect thereto.

(c)    Lessor shall have the unilateral right from time to time to grant such easements, rights, restrictions, and dedications that Lessor may deem necessary or desirable, and to cause the recordation of Parcel Maps and instruments to establish same. Provided, however, that no such easements or restrictions shall in any material way limit the use of the Premises by Lessee for its Use. Lessor shall not grant any easement or right of way that allows any person or entity to pass across, use or occupy the surface of the Premises during the term of this Lease. Provided, however, that Lessee shall permit Lessor, and Lessor's agents, contractors, and representatives, to enter upon the Premises on a temporary basis and in emergency situations, to repair, paint and otherwise maintain the building immediately adjoining the Premises. Lessee shall be reasonably compensated for any such temporary interference and with use of the parking positions thus utilized.

(d)    This Addendum supplements and amends the Lease. In the event of any conflict or inconsistency between the provisions of this Addendum and the provisions of the Lease, the provisions of this Addendum shall control and entirely supersede and replace the conflicting or inconsistent provisions of the Lease. From and after the date hereof, any references to the Lease or to any provision contained in the Lease shall be deemed a reference to the Lease or the provision of the

Lease as amended by this Addendum. Except as modified by this Addendum, all other provisions of the Lease shall remain in full force and effect. Lessor and Lessee ratify and reaffirm the terms and provisions of the Lease as modified by this Addendum.

IN WITNESS WHEREOF, the parties hereto have executed this Addendum to the Standard Industrial/Commercial Multi-Tenant Lease - Net as of the date first set forth above.

LESSOR:
THE COLONNADE ON EL PASEO, L.P.,
a California limited partnership

By: _____
    Laura Aflalo,
    Authorized Signatory

LESSEE:
Nicholas Lawrence Design Associates LLC

By: _____
    Nicholas Hertneck

By: _____
    Lawrence Lazzaro



**RENT ADJUSTMENT(S)**
STANDARD LEASE ADDENDUM

**Dated:** JUNE 13, 2022
**By and Between**
**Lessor:** THE COLONNADE ON EL PASEO, L.P.
**Lessee:** NICHOLAS LAWRENCE DESIGN ASSOCIATES LLC dba MODERN HACIENDA
**Property Address:** 73-399 EL PASEO DRIVE, SUITES 101 & 102, PALM DESERT, CA 92260
(street address, city, state, zip)

Paragraph: 57

**A.   RENT ADJUSTMENTS:**

The monthly rent for each month of the adjustment period(s) specified below shall be increased using the method(s) indicated below:
(Check Method(s) to be Used and Fill in Appropriately)

☐ I.   Cost of Living Adjustment(s) (COLA)

a.   On (Fill in COLA Dates): _____ the Base Rent shall be adjusted by the change, if any, from the Base Month specified below, in the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for (select one): ☐ CPI W (Urban Wage Earners and Clerical Workers) or ☐ CPI U (All Urban Consumers), for (Fill in Urban Area): _____, All items (1982-1984 = 100), herein referred to as "CPI".

b.   The monthly Base Rent payable in accordance with paragraph A.I.a. of this Addendum shall be calculated as follows: the Base Rent set forth in paragraph 1.5 of the attached Lease, shall be multiplied by a fraction the numerator of which shall be the CPI of the calendar month 2 months prior to the month(s) specified in paragraph A.I.a. above during which the adjustment is to take effect, and the denominator of which shall be the CPI of the calendar month which is 2 months prior to (select one): the ☐ first month of the term of this Lease as set forth in paragraph 1.3 ("Base Month") or ☐ (Fill in Other "Base Month"): _____. The sum so calculated shall constitute the new monthly Base Rent hereunder, but in no event, shall any such new monthly Base Rent be less than the Base Rent payable for the month immediately preceding the Base Rent adjustment.

c.   In the event the compilation and/or publication of the CPI shall be transferred to any other governmental department or bureau or agency or shall be discontinued, then the index most nearly the same as the CPI shall be used to make such calculation. In the event that the Parties cannot agree on such alternative index, then the matter shall be submitted for decision to the American Arbitration Association in accordance with the then rules of said Association and the decision of the arbitrators shall be binding upon the parties. The cost of said Arbitration shall be paid equally by the Parties.

☐ II.   Market Rental Value Adjustment(s) (MRV)

a.   On (Fill in MRV Adjustment Date(s): _____ the Base Rent shall be adjusted to the "Market Rental Value" of the property as follows:

1)   Four months prior to each Market Rental Value Adjustment Date described above, the Parties shall attempt to agree upon what the new MRV will be on the adjustment date. If agreement cannot be reached within thirty days, then:

(a)   Lessor and Lessee shall immediately appoint a mutually acceptable appraiser or broker to establish the new MRV within the next 30 days. Any associated costs will be split equally between the Parties, or

(b)   Both Lessor and Lessee shall each immediately make a reasonable determination of the MRV and submit such determination, in writing, to arbitration in accordance with the following provisions:

(i)   Within 15 days thereafter, Lessor and Lessee shall each select an independent third party ☐ appraiser or ☐ broker ("Consultant" - check one) of their choice to act as an arbitrator (Note: the parties may not select either of the Brokers that was involved in negotiating the Lease). The two arbitrators so appointed shall immediately select a third mutually acceptable Consultant to act as a third arbitrator.

(ii)   The 3 arbitrators shall within 30 days of the appointment of the third arbitrator reach a decision as to what the actual MRV for the Premises is, and whether Lessor's or Lessee's submitted MRV is the closest thereto. The decision of a majority of the arbitrators shall be binding on the Parties. The submitted MRV which is determined to be the closest to the actual MRV shall thereafter be used by the Parties.

(iii)   If either of the Parties fails to appoint an arbitrator within the specified 15 days, the arbitrator timely appointed by one of them shall reach a decision on his or her own, and said decision shall be binding on the Parties.

(iv)   The entire cost of such arbitration shall be paid by the party whose submitted MRV is not selected, i.e., the one that is NOT the closest to the actual MRV.

2)   When determining MRV, the Lessor, Lessee and Consultants shall consider the terms of comparable market transactions which shall include, but no limited to, rent, rental adjustments, abated rent, lease term and financial condition of tenants.

3)   Notwithstanding the foregoing, the new Base Rent shall not be less than the rent payable for the month immediately preceding the rent

INITIALS                                       INITIALS

© 2017 AIR CRE. All Rights Reserved.
RA-7.03, Revised 06-10-2019

Last Edited: 7/15/2022 7:44 AM
Page 1 of 2

adjustment.

    b.   Upon the establishment of each New Market Rental Value:

        1)   the new MRV will become the new "Base Rent" for the purpose of calculating any further Adjustments, and

        2)   the first month of each Market Rental Value term shall become the new 'Base Month' for the purpose of calculating any further Adjustments.

☑  III.   **Fixed Rental Adjustment(s) (FRA)**

The Base Rent shall be increased to the following amounts on the dates set forth below:

| On (Fill in FRA Adjustment Date(s)): | The New Base Rent shall be: |
| --- | --- |
| NOVEMBER 1, 2023 | $8,341.71 |
| NOVEMBER 1, 2024 | $8,591.96 |
| NOVEMBER 1, 2025 | $8,849.72 |
| NOVEMBER 1, 2026 | $9,115.21 |
| ——— | ——— |
| ——— | ——— |
| ——— | ——— |
| ——— | ——— |
| ——— | ——— |
| ——— | ——— |

AIR CRE • https://www.aircre.com • 213-687-8777 • contracts@aircre.com
NOTICE: No part of these works may be reproduced in any form without permission in writing.

INITIALS

INITIALS

© 2017 AIR CRE. All Rights Reserved.
RA-7.03, Revised 06-10-2019

Last Edited: 7/15/2022 7:44 AM
Page 2 of 2



contracts

## OPTION(S) TO EXTEND TERM
### STANDARD LEASE ADDENDUM

**Dated:**    JUNE 13, 2022
**By and Between**
    **Lessor:**    THE COLONNADE ON EL PASEO, LP
    **Lessee:**    NICHOLAS LAWRENCE DESIGN ASSOCIATES LLC dba MODERN HACIENDA
    **Property Address:**    73-399 EL PASEO DRIVE, SUITES 101 & 102, PALM DESERT, CA 92260
            (street address, city, state, zip)

Paragraph:  58  OPTION(S) TO EXTEND TERM. Subject to the terms, conditions and provisions of Paragraph 39, Lessor grants Lessee  ONE  option(s) to extend the term of the Lease ("Extension Option(s)") ("Extension Option(s)"), with each Extension Option being for a term of  60  months, commencing when the prior term expires ("Option Term(s)"). In order to exercise an Extension Option, Lessee must give written notice of such election to Lessor and Lessor must receive such notice at least  6  but not more than  9  months prior to the date that the applicable Option Term would commence, time being of the essence. If timely and proper notification of the exercise of an Extension Option is not given by Lessee and/or received by Lessor, such Extension Option shall automatically expire. Except as specifically modified, the terms, conditions and provisions of the Lease shall apply during Option Terms but the amount of Rent during Option Terms shall be established by using the method(s) selected below (check method(s) to be used and fill in appropriately):

☑ I.    **Consumer Price Index.**

(a)    During the Option Term(s) which start/s on  NOVEMBER 1, 2027 , the monthly Base Rent shall be increased on  NOVEMBER 1, 2028  and every  12  months thereafter during such Option Term(s) ("Option Term CPI Increase Date(s)") commensurate with the increase in the Option Term CPI (as herein defined) determined as follows: the monthly Base Rent scheduled for the month immediately preceding the first occurring Option Term CPI Increase Date shall be multiplied by a fraction the denominator of which is the Option Term Base CPI (as herein defined), and the numerator of which is the Option Term Comparison CPI (as herein defined). The amount so calculated shall constitute the new Base Rent until the next Option Term CPI Increase Date during the applicable Option Term, but in no event shall any such new Base Rent be less than the Base Rent for the month immediately preceding the applicable Option Term CPI Increase Date.

(b)    The term "Option Term CPI" shall mean the Consumer Price Index of the Bureau of Labor Statistics of the U.S. Department of Labor for (select one): ☐ CPI W (Urban Wage Earners and Clerical Workers) or ☑ CPI U (All Urban Consumers), for (fill in Urban Area): ____ or ☐ if the area in which the Premises is located, All items (1982-1984 = 100). The term "Option Term Comparison CPI" shall mean the CPI of the calendar month which is 2 full months prior to the applicable Option Term CPI Increase Date. The term "Option Term Base CPI" shall mean the CPI of the calendar month which is 2 full months prior to (select one): ☐ Commencement Date of the Original Term, ☑ start of the applicable Option Term, or ☐ (fill in month) ____.

(c)    If compilation and/or publication of the CPI is transferred to another governmental department, bureau or agency or is discontinued, then instead the Index most nearly the same as the CPI shall be used to calculate the Base Rent increases hereunder. If the Parties cannot agree on such alternative index, then the matter shall be submitted for decision to the American Arbitration Association in accordance with the then rules of said association and the decision of the arbitrators shall be binding upon the parties, with the cost of such arbitration being paid equally by the Parties.

(d)    Notwithstanding the foregoing, the increase in Base Rent shall not be less than three percent (3%) and not more than six percent (6%) per annum of the preceding month's Base Rent.

☐ II.    **Fixed Percentage.** During the Option Term(s) which start/s on ____ , the monthly Base Rent shall be increased on ____ and every ____ months thereafter during such Option Term(s) ("Option Term Percentage Increase Date(s)") by ____ percent ( ____ %) of the monthly Base Rent scheduled to be paid for the month immediately preceding the applicable Option Term Percentage Increase Date.

☑ III.    **Fair Market Value.**

(a)    During the Option Term(s) which start/s on  NOVEMBER 1, 2027 , the amount of Rent shall be the amount forecasted to be the fair market rental value of the Premises during such Option Term established pursuant to the procedures, terms, assumptions and conditions set forth herein ("Fair Market Value"); provided, however, regardless of such Fair Market Value, Base Rent during an Option Term shall not be less than the Base Rent scheduled as of when the prior term expires plus four percent (4%). Starting as of Lessee's exercise of the applicable Extension Option (but not earlier than six (6) months before start of the applicable Option Term), the Parties shall for thirty (30) days ("Negotiation Period") attempt to agree upon the Fair Market Value. If during the Negotiation Period the Parties do not agree on the Fair Market Value, then the Fair Market Value shall be established pursuant to the procedures set forth herein, which shall be binding.

(b)    Each Party shall, within fifteen (15) days after the end of the Negotiation Period, in writing submit to the other Party such Party's determination of the Fair Market Value ("Submitted Value(s)"). If a Party fails to timely provide a Submitted Value, then the other Party's Submitted Value shall be the Fair Market Value. If both Parties timely provide Submitted Values, then each Party shall, within fifteen (15) days after both Parties have exchanged Submitted Values, in writing notify the other Party of such Party's selected arbitrator who shall meet the qualifications set forth herein ("Advocate Arbitrator(s)"). Lessor and Lessee may select an Advocate Arbitrator who is favorable to such Party's position and may, prior to or after appointment of an Advocate Arbitrator, consult with such Party's Advocate Arbitrator. If a Party fails to timely and properly provide notice of such Party's chosen Advocate Arbitrator, then the other Party's Submitted Value shall be the Fair Market Value.

(c)    If both Parties timely and properly designate Advocate Arbitrators, then such Advocate Arbitrators shall, within fifteen (15) days after their selection,

INITIALS                                        INITIALS

© 2017 AIR CRE. All Rights Reserved.
OE-7.00, Revised 11-05-2021

choose a third (3rd) neutral arbitrator who shall meet the qualifications set forth herein ("Neutral Arbitrator"). The Neutral Arbitrator shall be engaged jointly by Lessor and Lessee. If Advocate Arbitrators fail to agree upon and timely appoint a Neutral Arbitrator, then the President of AIR CRE shall appoint such Neutral Arbitrator within fifteen (15) days after request by either Party. If the President of AIR CRE does not timely appoint the Neutral Arbitrator, then either Party may file an appropriate legal action with a Judge with competent jurisdiction over the Parties to appoint the Neutral Arbitrator.

(d)    The Advocate Arbitrators and the Neutral Arbitrator ("Arbitrator(s)") shall be duly licensed real estate brokers or salespersons in good standing in the state in which the Premises is located, shall have been active over the five (5) year period before their appointment in the leasing of properties similar to the Premises within the general real estate market of the Premises. The Neutral Arbitrator shall additionally not be related to or affiliated with either Party or Advocate Arbitrator, and shall not have previously represented in a real estate transaction a Party or anyone related to or affiliated with a Party. All matters to be determined by the Arbitrators shall be decided by a majority vote of the Arbitrators, with each Arbitrator having one (1) vote. The Arbitrators may, as the Arbitrators determine, hold hearings and require briefs, including market data and additional information.

(e)    Within thirty (30) days after selection of the Neutral Arbitrator, the three Arbitrators shall first reach a decision as to their own independent opinion of the Fair Market Value established by taking into account the terms, assumptions and conditions set forth herein ("Arbitrators' Market Value"), then decide which Party's Submitted Value is closer in monetary amount to the Arbitrators' Market Value ("Selected Market Value"), then provide the Parties a copy of the Arbitrators' Market Value and finally notify the Parties of the Selected Market Value. The Selected Market Value shall be the Fair Market Value. The Arbitrators shall have no right to decide a Selected Market Value which is a compromise to (or modification of) the Submitted Values. The decision of the Arbitrators shall be binding upon the Parties. The Party whose Submitted Value is not the Selected Market Value shall, within ten (10) days after the Arbitrators decide the Selected Market Value, pay the fees and costs of all three (3) Arbitrators.

(f)    If the Fair Market Value has not been established before the start of the applicable Option Term, then Lessee shall continue to pay to Lessor rent in the amount payable for the month immediately preceding the start of such Option Term and Lessor's acceptance of such rent shall not waive, adversely affect or prejudice the Parties' right to complete establishment of the Fair Market Value or Lessor's right to collect the full amount of the Fair Market Value once the Fair Market Value is established. Lessee shall, within ten (10) days after establishment of the Fair Market Value, pay to Lessor any deficiency in rent then due for the Option Term. Following establishment of Fair Market Value, the Parties shall, within ten (10) days after request by either Party, sign an amendment to this Lease to confirm the Fair Market Value and the expiration date of this Lease, but the Parties' failure to request or to sign such an amendment shall not affect establishment of the Fair Market Value or extension of the Lease term.

(g)    The Arbitrators, in deciding the Arbitrators' Market Value, shall take into account rent rates, rent abatements, periodic rent increases, real property taxes, insurance premiums and other operating expenses, tenant improvement and other applicable allowances, building services, length of lease term and other factors professional real estate brokers and/or appraisers customarily consider in determining fair market rent of property in an arm's length transaction by ready, willing and able parties for space of comparable location, size, age, condition, quality, parking, visibility, view, signage and accessibility if the Premises were marketed in a normal and customary manner for a reasonable length of time on the open market to be leased to a tenant with financial strength and credit worthiness comparable to Lessee and guarantors (if any) of this Lease (as of Lessee's exercise of the Extension Option) for a term comparable to the length of the applicable Option Term and used for the Agreed Use (or other reasonably comparable uses). The Arbitrators, in deciding the Arbitrators' Market Value, shall not consider as a comparable transaction any of the following: a sublease, lease assignment, lease renewal or extension; lease with a tenant that has equity, is related to or affiliated with the landlord; or a lease of space that was subject to a right of first refusal, right of first offer, expansion option or other encumbrances. The Arbitrators, in deciding the Arbitrators' Market Value, shall reduce the Fair Market Value on account of Alterations and improvements made by Lessee to the extent the cost thereof was paid solely by Lessee (in excess of any applicable improvement allowance, abated rent in lieu of improvement allowance or other consideration provided by Lessor for Lessee's improvement of the Premises), shall not reduce the Fair Market Value on account of any real estate brokerage commission savings by Lessor, and shall not reduce the Fair Market Value on account of deferred maintenance or repair of the Premises for which Lessee was responsible under the Lease but did not perform.

☐ IV.    **Fixed Rental Adjustment(s) ("FRA").**
The monthly Base Rent shall be increased to the following amounts on the dates set forth below:

| On (fill in FRA Adjustment Date(s)): | The new Base Rent shall be: |
|---|---|
| —— | —— |
| —— | —— |
| —— | —— |
| —— | —— |
| —— | —— |
| —— | —— |
| —— | —— |
| —— | —— |

☐ V.    **Continuation of Original Term Adjustments.**
The monthly Base Rent during the Option Term(s) which start(s) on ____ shall be increased in accordance with the same formula provided in the Lease to be used to calculate increases in the Base Rent during the Original Term of the Lease.

BROKER'S FEE:  For each adjustment to Base Rent specified above, the Brokers shall be paid a Brokerage Fee in accordance with paragraph 15 of the Lease or, if applicable, paragraph 9 of the Sublease.

AIR CRE • https://www.aircre.com • 213-687-8777 • contracts@aircre.com
NOTICE: No part of these works may be reproduced in any form without permission in writing.

INITIALS

INITIALS

© 2017 AIR CRE. All Rights Reserved.
OE-7.00, Revised 11-05-2021

Last Edited: 7/15/2022 7:44 AM



contracts

# GUARANTY OF LEASE

WHEREAS, THE COLONNADE ON EL PASEO, LP , hereinafter "Lessor", and NICHOLAS LAWRENCE DESIGN ASSOCIATES LLC dba MODERN HACIENDA , hereinafter "Lessee", are about to execute a document entitled "Lease" dated JUNE 13, 2022 concerning the premises commonly known as (street address, city, state, zip) 73-399 EL PASEO DRIVE, SUITES 101 & 102, PALM DESERT, CA 92260 wherein Lessor will lease the premises to Lessee, and

WHEREAS, NICHOLAS HERTNECK AND LAWRENCE LAZZARO , hereinafter "Guarantors" have a financial interest in Lessee, and

WHEREAS, Lessor would not execute the Lease if Guarantors did not execute and deliver to Lessor this Guaranty of Lease.

NOW THEREFORE, in consideration of the execution of said Lease by Lessor and as a material inducement to Lessor to execute said Lease, Guarantors hereby jointly, severally, unconditionally and irrevocably guarantee the prompt payment by Lessee of all rents and all other sums payable by Lessee under said Lease and the faithful and prompt performance by Lessee of each and every one of the terms, conditions and covenants of said Lease to be kept and performed by Lessee.

It is specifically agreed by Lessor and Guarantors that: (i) the terms of the foregoing Lease may be modified by agreement between Lessor and Lessee, or by a course of conduct, and (ii) said Lease may be assigned by Lessor or any assignee of Lessor without the consent of or notice to Guarantors and that this Guaranty shall guarantee the performance of said Lease as so modified.

This Guaranty shall not be released, modified or affected by the failure or delay on the part of Lessor to enforce any of the rights or remedies of the Lessor under said Lease.

No notice of default by Lessee under the Lease need be given by Lessor to Guarantors, it being specifically agreed that the guarantee of the undersigned is a continuing guarantee under which Lessor may proceed immediately against Guarantors and/or against Guarantors following any breach or default by Lessee or for the enforcement of any rights which Lessor may have as against Lessee under the terms of the Lease or at law or in equity.

Lessor shall have the right to proceed against Guarantors following any breach or default by Lessee under the Lease without first proceeding against Lessee and without previous notice to or demand upon either Lessee or Guarantors.

Guarantors hereby waive (a) notice of acceptance of this Guaranty, (b) demand of payment, presentation and protest, (c) all right to assert or plead any statute of limitations relating to this Guaranty or the Lease, (d) any right to require the Lessor to proceed against the Lessee or any other Guarantor or any other person or entity liable to Lessor, (e) any right to require Lessor to apply to any default any security deposit or other security it may hold under the Lease, (f) any right to require Lessor to proceed under any other remedy Lessor may have before proceeding against Guarantors, (g) any right of subrogation that Guarantors may have against Lessee.

Guarantors do hereby subordinate all existing or future indebtedness of Lessee to Guarantors to the obligations owed to Lessor under the Lease and this Guaranty.

If a Guarantor is married, such Guarantor expressly agrees that recourse may be had against his or her separate property for all of the obligations hereunder.

The obligations of Lessee under the Lease to execute and deliver estoppel statements and financial statements, as therein provided, shall be deemed to also require the Guarantors to provide estoppel statements and financial statements to Lessor. The failure of the Guarantors to provide the same to Lessor shall constitute a default under the Lease.

The term "Lessor" refers to and means the Lessor named in the Lease and also Lessor's successors and assigns. So long as Lessor's interest in the Lease, the leased premises or the rents, issues and profits therefrom, are subject to any mortgage or deed of trust or assignment for security, no acquisition by Guarantors of the Lessor's interest shall affect the continuing obligation of Guarantors under this Guaranty which shall nevertheless continue in full force and effect for the benefit of the mortgagee, beneficiary, trustee or assignee under such mortgage, deed of trust or assignment and their successors and assigns.

The term "Lessee" refers to and means the Lessee named in the Lease and also Lessee's successors and assigns.

Any recovery by Lessor from any other guarantor or insurer shall first be credited to the portion of Lessee's indebtedness to Lessor which exceeds the maximum liability of Guarantors under this Guaranty.

No provision of this Guaranty or right of the Lessor can be waived, nor can the Guarantors be released from their obligations except in writing signed by the Lessor.

Any litigation concerning this Guaranty shall be initiated in a state court of competent jurisdiction in the county in which the leased premises are located and the Guarantors consent to the jurisdiction of such court. This Guaranty shall be governed by the laws of the State in which the leased premises are located and for the purposes of any rules regarding conflicts of law the parties shall be treated as if they were all residents or domiciles of such State.

In the event any action be brought by said Lessor against Guarantors hereunder to enforce the obligation of Guarantors hereunder, the unsuccessful party in such action shall pay to the prevailing party therein a reasonable attorney's fee. The attorney's fee award shall not be computed in accordance with any court fee schedule, but shall be such as to full reimburse all attorneys' fees reasonably incurred.

If any Guarantor is a corporation, partnership, or limited liability company, each individual executing this Guaranty on said entity's behalf represents and warrants that he or she is duly authorized to execute this Guaranty on behalf of such entity. Signatures to this Guaranty accomplished by means of electronic signature or similar technology shall be legal and binding.

INITIALS _____                    INITIALS _____

© 2017 AIR CRE. All Rights Reserved.
GR-3.22, Revised 10-22-2020

If this Form has been filled in, it has been prepared for submission to your attorney for his approval. No representation or recommendation is made by AIR CRE, the real estate broker or its agents or employees as to the legal sufficiency, legal effect, or tax consequences of this Form or the transaction relating thereto.

GUARANTORS
 NICHOLAS HERTNECK AND LAWRENCE LAZZARO

Executed At: _PALM DESERT, CA_
On: _JULY 27, 2022_

By: _____
Name Printed:  NICHOLAS HERTNECK
Title:  _MEMBER OF LLC_
Address: _84 INVERNESS DR._
         _RANCHO MIRAGE CA 92270_

By: _____
Name Printed:  LAWRENCE LAZZARO
Title:  _Member of LLC_
Address: _816 INVERNESS DR. RANCHO MIRAGE CA_
                                          _92270_

AIR CRE  •  https://www.aircre.com  •  213-687-8777  •  contracts@aircre.com
NOTICE:  No part of these works may be reproduced in any form without permission in writing.

INITIALS

INITIALS

© 2017 AIR CRE. All Rights Reserved.
GR-3.22, Revised 10-22-2020

**Exhibit "___2___"**

## NOTICE TO PAY RENT OR QUIT

TO:   NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA
      MODERN HACIENDA

      AND ALL OTHERS IN POSSESSION

      YOU ARE HEREBY NOTIFIED that pursuant to the lease or
rental agreement under which you now hold possession of the
hereinafter described premises there is now due, unpaid, and
delinquent rent in the total sum of TWENTY THOUSAND EIGHT
HUNDRED SIX DOLLARS AND 42/100 ($20,806.42) in rents due and
owing for the period delineated as follows:

      July 1, 2024 rent          $ 8,341.71
      July, 2024 CAM             $ 2,061.50
      August 1, 2024 rent        $ 8,341.71
      August 1, 2024 CAM         $ 2,061.50

      YOU ARE FURTHER NOTIFIED that within THREE (3) BUSINESS
days after service of this Notice on you, you must pay the
amount of said rent in full or quit said premises and deliver
up possession of same to the undersigned or THE COLONNADE ON
EL PASEO, LP who is authorized to receive possession of same
or the Lessor will institute legal proceedings for unlawful
detainer against you to recover possession of said premises, to
declare said lease or rental agreement forfeited, to recover
rent and damages, and attorney's fees.

      YOU ARE FURTHER NOTIFIED THAT by this Notice, the Lessor
elects to and does hereby declare a forfeiture of said lease
or rental agreement if said rent is not paid in full within
said THREE (3) BUSINESS days.

      The premises herein referred to are situated in the City
of Palm Desert, County of Riverside, State of California,
designated by the number and street as 73-399 El Paseo Drive,
#101 and 102.

      Dated this 13th day of August, 2024.

LAW OFFICES OF FRED M. SZKOLNIK
a law corporation
16311 Ventura Blvd., #1060
Encino, CA 91436
(818)986-3888              By:  Laura Aflalo, manager
                           THE COLONNADE ON EL PASEO, LP

ALL PAYMENTS MAY BE DIRECTED TO THE COLONNADE ON EL PASEO, LP
IN CARE OF LAURA AFLALO, 421 SOUTH BEVERLY DRIVE, #500, BEVERLY
HILLS, CA 90212, (310)203-0101.   SHOULD YOU WISH TO DELIVER THE
SUMS IN PERSON, YOU MAY DO SO MONDAY-FRIDAY, 9:00 AM - 5:00 PM.
PAYMENT MUST BE RECEIVED WITHIN THE NOTICE PERIOD.

        The amount demanded herein is a good faith reasonable estimate of the
total sums due pursuant to California Code of Civil Procedure Section 1161.1.

        Pursuant to paragraph 4.1 of the lease, all sums due are deemed to be
additional rent.

        This notice does not demand payments that may have come due prior to
April 1, 2023; however, any amounts you may owe prior to April 1, 2023,
are not waived and Landlord reserves the right to pursue those amounts in
a separate action.

        Acceptance of any partial payments made to landlord does not
constitute a waiver of any rights landlord may have, including but not
limited to, the right to recover possession of the subject premises pursuant
to CCP §1161.1.

cc:   nicholas@nicholaslawrencedesign.com
      lawrence@nicholaslawrencedesign.com

POS-050/EFS-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|---|

NAME: FRED M. SZKOLNIK, ESQ
FIRM NAME: FRED M. SZKOLNIK, ESQ.
STREET ADDRESS: 16311 VENTURA BLVD. #1060
CITY: ENCINO
STATE: CA   ZIP CODE: 91436
TELEPHONE NO.: (818) 986-3888   FAX NO.:
E-MAIL ADDRESS: lusi@fredszkolniklaw.com
ATTORNEY FOR (Name): Plaintiff: COLONNADE

N/A

STREET ADDRESS: .

MAILING ADDRESS:

CITY AND ZIP CODE: ., CA

BRANCH NAME:

Plaintiff/Petitioner: THE COLONNADE ON EL PASEO, LP

Defendant/Respondent: NICHOLAS LAWRENCE DESIGN

CASE NUMBER:

JUDICIAL OFFICER:

DEPARTMENT:

**PROOF OF ELECTRONIC SERVICE**

1. I am at least 18 years old.

   a. My residence or business address is:
      1301 W Second Street, Suite 204
      Los Angeles, CA 90026

   b. My electronic service address is:

2. I electronically served the following documents:
   NOTICE TO PAY RENT OR QUIT

   ☐ The documents served are listed in an attachment *(Form POS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:

   a. Name of the person served: NICHOLAS@NICHOLASLAWRENCEDESIGN.COM

      On behalf of *(name or names of parties represented, if person served is an attorney):*

   b. Electronic service address of the person served:

   c. On : 8/13/2024

   d. At : 4:12 PM
      ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

   Date: August 14, 2024

   I declare under penalty of perjury that under the laws of State of California that the foregoing is true and correct.

   _____A. YOST_____          ►          _____
   (TYPE OR PRINT NAME OF DECLARANT)                (SIGNATURE OF DECLARANT)

Form Approved For Optional Use
Judicial Council of California
POS-050 [Rev January 1, 2015]

**PROOF OF ELECTRONIC SERVICE**
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251
www.courts.ca.gov

**Exhibit "___3___"**

Electronically Fi     by Superior Court of California, County of Riverside o.    23/2024 03:42 PM
Case Number UDPS2400956 0000103074363 - Jason B. Galkin, Executive Officer/Clerk of the Court By Victoria Lopez, Clerk

**UD-100**

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: 94612 | FOR COURT USE ONLY |
|---|---|---|
| NAME: FRED M. SZKOLNIK | | |

FIRM NAME: LAW OFFICES OF FRED M. SZKOLNIK, ALC ·
STREET ADDRESS: 16311 VENTURA BLVD. #1060
CITY: ENCINO      STATE: CA    ZIP CODE: 91436
TELEPHONE NO.: 818-986-3888     FAX NO.:
EMAIL ADDRESS:
ATTORNEY FOR (name): THE COLONNADE ON EL PASEO, LP

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 3255 E. TAHQUITZ CANYON WAY
MAILING ADDRESS:
CITY AND ZIP CODE: PALM SPRINGS, CA 92662
BRANCH NAME: PALM SPRINGS SUPERIOR COURT

PLAINTIFF: THE COLONNADE ON EL PASEO, LP
DEFENDANT: NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN
[X] DOES 1 TO 10        HACIENDA, AND

| COMPLAINT—UNLAWFUL DETAINER* | CASE NUMBER: |
|---|---|
| [X] COMPLAINT  [ ] AMENDED COMPLAINT (Amendment Number): | UDPS2400956 |

**Jurisdiction** *(check all that apply):*

[ ] ACTION IS A LIMITED CIVIL CASE (amount demanded does not exceed $35,000)
Amount demanded    [ ] does not exceed $10,000
                   [ ] exceeds $10,000
[X] ACTION IS AN UNLIMITED CIVIL CASE (amount demanded exceeds $35,000)
[ ] ACTION IS RECLASSIFIED by this amended complaint or cross-complaint *(check all that apply):*
    [ ] from unlawful detainer to general unlimited civil (possession not in issue).    [ ] from limited to unlimited.
    [ ] from unlawful detainer to general limited civil (possession not in issue).    [ ] from unlimited to limited.

1. *PLAINTIFF (name each):*
   THE COLONNADE ON EL PASEO, LP

   *alleges causes of action against DEFENDANT (name each):*
   NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN HACIENDA

2. a. Plaintiff is  (1) [ ] an individual over the age of 18 years.  (4) [X] a partnership.
                    (2) [ ] a public agency.                        (5) [ ] a corporation.
                    (3) [ ] other *(specify):*
   b. [ ] Plaintiff has complied with the fictitious business name laws and is doing business under the fictitious name of *(specify):*

3. a. *The venue is the court named above because defendant named above is in possession of the premises located at (street address, apt. no., city, zip code, and county):*
      73-399 El PASEO DRIVE #101 AND 102, PALM DESERT, CA 92260
   b. The premises in 3a *(check one)*
      (1) [X] within the city limits of *(name of city):* PALM DESERT
      (2) [ ] within the unincorporated area of *(name of county):*
   c. The premises in 3a were constructed in *(approximate year):* 1972

4. Plaintiff's interest in the premises is [X] as owner [ ] other *(specify):*

5. The true names and capacities of defendants sued as Does are unknown to plaintiff.

* NOTE: Do not use this form for evictions after sale (Code Civ. Proc., § 1161a).

| Form Approved for Optional Use | | Civil Code, § 1940 et seq.; |
|---|---|---|
| Judicial Council of California | **COMPLAINT—UNLAWFUL DETAINER** | Code of Civil Procedure, §§ 425.12, 1166 |
| UD-100 [Rev. January 1, 2024] | | www.courts.ca.gov |

**UD-100**

| PLAINTIFF: THE COLONNADE ON EL PASEO, LP | CASE NUMBER: |
|---|---|
| DEFENDANT: NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN | UDPS2400956 |

6.  a.  On or about *(date)*: 6/13/2022

      *defendant (name each):*
      NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN HACIENDA

    (1)  agreed to rent the premises as a  ☐ month-to-month tenancy  ☒ other tenancy *(specify):* LEASE
    (2)  agreed to pay rent of  $ 8,098.75     payable  ☒ monthly  ☐ other *(specify frequency):*
    (3)  agreed to pay rent on the  ☒ first of the month  ☐ other day *(specify):*

    b.  This  ☒ written  ☐ oral  agreement was made with
        (1) ☒ plaintiff.     (3) ☐ plaintiff's predecessor in interest.
        (2) ☐ plaintiff's agent.  (4) ☐ Other *(specify):*

    c.  ☐ The defendants not named in item 6a are
        (1) ☐ subtenants.
        (2) ☐ assignees.
        (3) ☐ Other *(specify):*

    d.  ☒ The agreement was later changed as follows *(specify):*
      RENT WAS INCREASED TO $8,341.71 PER MONTH AND COMMON AREA CHARGES OF $2,061.50 PER MONTH.

    e.  ☒ A copy of the written agreement, including any addenda or attachments that form the basis of this complaint, is attached
      and labeled Exhibit 1. *(Required for residential property, unless item 6f is checked. See Code Civ. Proc., § 1166.)*

    f.  ☐ *(For residential property)* A copy of the written agreement is not attached because *(specify reason):*
        (1) ☐ *the written agreement is not in the possession of the landlord or the landlord's employees or agents.*
        (2) ☐ *this action is solely for nonpayment of rent (Code Civ. Proc., § 1161(2)).*

7.  The tenancy described in 6 *(complete (a) or (b))*

    a.  ☒ is not subject to the Tenant Protection Act of 2019 (Civil Code, § 1946.2). The specific subpart supporting why tenancy
      is exempt is *(specify):* COMMERCIAL PROPERTY .

    b.  ☐ is subject to the Tenant Protection Act of 2019.

8.  *(Complete only if item 7b is checked. Check all applicable boxes.)*

    a.  ☐ The tenancy was terminated for at-fault just cause (Civil Code, § 1946.2(b)(1)).

    b.  ☐ The tenancy was terminated for no-fault just cause (Civil Code, § 1946.2(b)(2)) and the plaintiff *(check one)*

        (1) ☐ waived the payment of rent for the final month of the tenancy, before the rent came due, under
             section 1946.2(d)(2), in the amount of  $

        (2) ☐ provided a direct payment of one month's rent under section 1946.2(d)(3), equaling  $
             to *(name each defendant and amount given to each):*

    c.  ☐ Because defendant failed to vacate, plaintiff is seeking to recover the total amount in 8b as damages in this action.

9.  a.  ☒ Defendant *(name each):* NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN HACIENDA

    was served the following notice on the same date and in the same manner:

    (1) ☒ 3-day notice to pay rent or quit     (5) ☐ 3-day notice to perform covenants or quit
    (2) ☐ 30-day notice to quit                   *(not applicable if item 7b checked)*
    (3) ☐ 60-day notice to quit         (6) ☐ 3-day notice to quit under Civil Code, § 1946.2(c)
    (4) ☐ 3-day notice to quit                 Prior required notice to perform covenants served *(date):*
                                 (7) ☐ Other *(specify):*

**UD-100**

| PLAINTIFF:  THE COLONNADE ON EL PASEO, LP | CASE NUMBER: |
|---|---|
| DEFENDANT:  NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN | UDPS2400956 |

9.  b.  (1)  On *(date):* 8/16/2024            the period stated in the notice checked in 9a expired at the end of the day.

    (2)  Defendants failed to comply with the requirements of the notice by that date.

   c.  All facts stated in the notice are true.

   d.  ☒  The notice included an election of forfeiture.

   e.  ☒  A copy of the notice is attached and labeled Exhibit 2. *(Required for residential property. See Code Civ. Proc., § 1166. When Civil Code, § 1946.2(c), applies and two notices are required, provide copies of both.)*

   f.  ☐  One or more defendants were served (1) with the prior required notice under Civil Code, § 1946.2(c), (2) with a different notice, (3) on a different date, or (4) in a different manner, as stated in Attachment 10c. *(Check item 10c and attach a statement providing the information required by items 9a–e and 10 for each defendant and notice.)*

10. a.  ☒  The notice in item 9a was served on the defendant named in item 9a as follows:

    (1)  ☐  By personally handing a copy to defendant on *(date):*           ;

    (2)  ☐  By leaving a copy with *(name or description):*

       a person of suitable age and discretion, on *(date):*                at defendant's
       ☐  residence    ☐  business   AND mailing a copy to defendant at defendant's place of residence
       on *(date):*                         because defendant cannot be found at defendant's residence or usual place of business.

    (3)  ☒  By posting a copy on the premises on *(date):* 8/13/2024
       ☐                                   AND mailing a copy to defendant at the premises
       on *(date):*    8/13/2024

       (a)  ☐  because defendant's residence and usual place of business cannot be ascertained OR

       (b)  ☒  because no person of suitable age or discretion can be found there.

    (4)  ☐  *(Not for 3-day notice; see Civil Code, § 1946, before using)* By sending a copy by certified or registered mail addressed to defendant on *(date):*

    (5)  ☐  *(Not for residential tenancies; see Civil Code, § 1953, before using)* In the manner specified in a written commercial lease between the parties

   b.  ☐  *(Name):*
      was served on behalf of all defendants who signed a joint written rental agreement.

   c.  ☐  Information about service of notice on the defendants alleged in item 9f is stated in Attachment 10c.

   d.  ☐  Proof of service of the notice in item 9a is attached and labeled Exhibit 3.

11. ☐  Plaintiff demands possession from each defendant because of expiration of a fixed-term lease.

12. ☒  At the time the 3-day notice to pay rent or quit was served, the amount of **rent due** was  $20,806.21

13. ☒  The fair rental value of the premises is  $278.05               per day.

14. ☐  Defendant's continued possession is malicious, and plaintiff is entitled to statutory damages under Code of Civil Procedure section 1174(b). *(State specific facts supporting a claim up to $600 in Attachment 14.)*

15. ☒  A written agreement between the parties provides for attorney fees.

16. ☐  Defendant's tenancy is subject to the local rent control or eviction control ordinance of  *(city or county, title of ordinance, and date of passage):*


   Plaintiff has met all applicable requirements of the ordinances.

17. ☐  Other allegations are stated in Attachment 17.

18. Plaintiff accepts the jurisdictional limit, if any, of the court.

---

UD-100 [Rev. January 1, 2024]                    **COMPLAINT—UNLAWFUL DETAINER**                              Page 3 of 4

| PLAINTIFF: THE COLONNADE ON EL PASEO, LP | CASE NUMBER: |
|---|---|
| DEFENDANT: NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN | UDPS2400956 |

**19. PLAINTIFF REQUESTS**

a. possession of the premises.

b. costs incurred in this proceeding:

c. [X] past-due rent of $ 20,806.21

d. [X] reasonable attorney fees.

e. [X] forfeiture of the agreement.

f. [ ] damages in the amount of waived rent or relocation assistance as stated in item 8: $

g. [X] damages at the rate stated in item 13 from date: 9/1/2024

for each day that defendants remain in possession through entry of judgment.

h. [ ] statutory damages up to $600 for the conduct alleged in item 14.

i. [X] other (specify): SUCH OTHER AND FURTHER RELIEF AS THE COURT MAY DEEM JUST AND PROPER.

20. [ ] Number of pages attached (specify):

### UNLAWFUL DETAINER ASSISTANT (Bus. & Prof. Code, §§ 6400–6415)

21. [X] (Complete in all cases.) An unlawful detainer assistant [X] did not [ ] did for compensation give advice or assistance with this form. (If declarant has received any help or advice for pay from an unlawful detainer assistant, complete a–f.)

a. Assistant's name:

b. Street address, city, and zip code:

c. Telephone no.:

d. County of registration:

e. Registration no.:

f. Expires on (date):

Date: 8/22/2024

FRED M. SZKOLNIK
_____
(TYPE OR PRINT NAME)

►_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

### VERIFICATION

(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)

I am the plaintiff in this proceeding and have read this complaint. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

SEE ATTACHMENTS
_____
(TYPE OR PRINT NAME)

►_____
(SIGNATURE OF PLAINTIFF)

CP10.5

**NOTICE:** EVERYONE WHO LIVES IN THIS RENTAL UNIT MAY BE EVICTED BY COURT ORDER. READ THIS FORM IF YOU LIVE HERE AND IF YOUR NAME IS NOT ON THE ATTACHED SUMMONS AND COMPLAINT.

1. If you live here and you do not complete and submit this form, you may be evicted without further hearing by the court along with the persons named in the Summons and Complaint.
2. You must file this form within 10 days of the date of service listed in the box on the right hand side of this form.
   - Exception: If you are a tenant being evicted after your landlord lost the property to foreclosure, the 10-day deadline does not apply to you and you may file this form at any time before judgment is entered.
3. If you file this form, your claim will be determined in the eviction action against the persons named in the complaint.
4. If you do not file this form, you may be evicted without further hearing.
5. If you are a tenant being evicted due to foreclosure, you have additional rights and should seek legal advice immediately.

| CLAIMANT OR CLAIMANT'S ATTORNEY (Name and Address):   TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|
| ATTORNEY FOR (Name): | |

NAME OF COURT: RIVERSIDE
STREET ADDRESS:  3255 E. TAHQUITZ CANYON WAY
MAILING ADDRESS:
CITY AND ZIP CODE:   PALM SPRINGS, CA 92262
BRANCH NAME:  RIVERSIDE SUPERIOR COURT

Plaintiff: THE COLONNADE ON EL PASEO, LP
Defendant: NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN

| **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | CASE NUMBER: |
|---|---|
| | UDPS2400956 |

Complete this form only if ALL of these statements are true:
1. You are NOT named in the accompanying Summons and Complaint.
2. You occupied the subject premises on or before the date the unlawful detainor (eviction) complaint was filed. (The date is in the accompanying Summons and Complaint.)
3. You still occupy the subject premises.

(To be completed by the process server)
DATE OF SERVICE:
(Date that form is served or delivered, posted, and mailed by the officer or process server)

I DECLARE THE FOLLOWING UNDER PENALTY OF PERJURY:

1. My name is (specify):
2. I reside at (street address, unit no., city and ZIP code):

3. The address of "the premises" subject to this claim is (address):

   73-399 EL PASEO DRIVE #101 AND #102, PALM DESERT, CA 92260

4. On (insert date):                          , the landlord or the landlord's authorized agent filed a complaint to recover possession of the premises. (This date is in the accompanying Summons and Complaint.)

5. I occupied the premises on the date the complaint was filed (the date in item 4). I have continued to occupy the premises ever since.

6. I was at least 18 years of age on the date the complaint was filed (the date in item 4).

7. I claim a right to possession of the premises because I occupied the premises on the date the complaint was filed (the date in item 4).

8. I was not named in the Summons and Complaint.

9. I understand that if I make this claim of possession, I will be added as a defendant to the unlawful detainer (eviction) action.

10. (Filing fee) I understand that I must go to the court and pay a filing fee of  $          or file with the court an "Application for Waiver of Court Fees and Costs." I understand that if I don't pay the filing fee or file the form for waiver of court fees, I will not be entitled to make a claim of right to possession.

(Continued on reverse)

| CP10.5 [Rev. June 18, 2015] | **PREJUDGMENT CLAIM OF RIGHT TO POSSESSION** | Code of Civil Procedure, §§ 415.46, 715.010, 715.020, 1174.25 |
|---|---|---|

| | | CP10.5 |
|---|---|---|
| Plaintiff: | THE COLONNADE ON EL PASEO, LP | CASE NUMBER: |
| Defendant: | NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA MODERN | UDPS2400956 |

11. If my landlord lost this property to foreclosure, I understand that I can file this form at any time before judgment is entered, and that I have additional rights and should seek legal advice.

12. I understand that I will have *five days* (excluding court holidays) to file a response to the Summons and Complaint after I file this Prejudgment Claim of Right to Possession form.

> **NOTICE: If you fail to file this claim, you may be evicted without further hearing.**

13. **Rental agreement. I have** *(check all that apply to you):*

   a. ☐ an oral or written rental agreement with the landlord.

   b. ☐ an oral or written rental agreement with a person other than the landlord.

   c. ☐ an oral or written rental agreement with the former owner who lost the property to foreclosure.

   d. ☐ other *(explain):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

> **WARNING:** Perjury is a felony punishable by imprisonment in the state prison.

Date:

_____              ▶
(TYPE OR PRINT NAME)                                   (SIGNATURE OF CLAIMANT)

> **NOTICE:** If you file this claim to possession, the unlawful detainer action against you will be determined at trial. At trial, you may be found liable for rent, costs, and, in some cases, treble damages.

---

### — NOTICE TO OCCUPANTS —

**YOU MUST ACT AT ONCE if all the following are true:**

   1. You are NOT named in the accompanying Summons and Complaint.

   2. You occupied the premises on or before the date the unlawful detainer (eviction) complaint was filed.

   3. You still occupy the premises.

You can complete and SUBMIT THIS CLAIM FORM WITHIN 10 DAYS from the date of service (on the form) at the court where the unlawful detainer (eviction) complaint was filed. If you are a tenant and your landlord lost the property you occupy through foreclosure, this 10-day deadline does not apply to you. You may file this form at any time before judgment is entered. You should seek legal advice immediately.

If you do not complete and submit this form (and pay a filing fee or file a fee waiver form if you cannot pay the fee), YOU WILL BE EVICTED.

After this form is properly filed, you will be added as a defendant in the unlawful detainer (eviction) action and your right to occupy the premises will be decided by the court. *If you do not file this claim, you may be evicted without a hearing.*

<u>NOTICE TO PAY RENT OR QUIT</u>

TO:  NICHOLAS LAWRENCE DESIGN ASSOCIATES, LLC DBA
MODERN HACIENDA

AND ALL OTHERS IN POSSESSION

YOU ARE HEREBY NOTIFIED that pursuant to the lease or rental agreement under which you now hold possession of the hereinafter described premises there is now due, unpaid, and delinquent rent in the total sum of TWENTY THOUSAND EIGHT HUNDRED SIX DOLLARS AND 42/100 ($20,806.42) in rents due and owing for the period delineated as follows:

| | |
|---|---|
| July 1, 2024 rent | $ 8,341.71 |
| July, 2024 CAM | $ 2,061.50 |
| August 1, 2024 rent | $ 8,341.71 |
| August 1, 2024 CAM | $ 2,061.50 |

YOU ARE FURTHER NOTIFIED that within THREE (3) BUSINESS days after service of this Notice on you, you must pay the amount of said rent in full or quit said premises and deliver up possession of same to the undersigned or THE COLONNADE ON EL PASEO, LP who is authorized to receive possession of same or the Lessor will institute legal proceedings for unlawful detainer against you to recover possession of said premises, to declare said lease or rental agreement forfeited, to recover rent and damages, and attorney's fees.

YOU ARE FURTHER NOTIFIED THAT by this Notice, the Lessor elects to and does hereby declare a forfeiture of said lease or rental agreement if said rent is not paid in full within said THREE (3) BUSINESS days.

The premises herein referred to are situated in the City of Palm Desert, County of Riverside, State of California, designated by the number and street as 73-399 El Paseo Drive, #101 and 102.

Dated this 13th day of August, 2024.

LAW OFFICES OF FRED M. SZKOLNIK
a law corporation
16311 Ventura Blvd., #1060
Encino, CA 91436
(818) 986-3888

By:  Laura Aflalo, manager
THE COLONNADE ON EL PASEO, LP

ALL PAYMENTS MAY BE DIRECTED TO THE COLONNADE ON EL PASEO, LP IN CARE OF LAURA AFLALO, 421 SOUTH BEVERLY DRIVE, #500, BEVERLY HILLS, CA 90212, (310)203-0101.  SHOULD YOU WISH TO DELIVER THE SUMS IN PERSON, YOU MAY DO SO MONDAY-FRIDAY, 9:00 AM - 5:00 PM. PAYMENT MUST BE RECEIVED WITHIN THE NOTICE PERIOD.

The amount demanded herein is a good faith reasonable estimate of the total sums due pursuant to California Code of Civil Procedure Section 1161.1.

Pursuant to paragraph 4.1 of the lease, all sums due are deemed to be additional rent.

This notice does not demand payments that may have come due prior to April 1, 2023; however, any amounts you may owe prior to April 1, 2023, are not waived and Landlord reserves the right to pursue those amounts in a separate action.

Acceptance of any partial payments made to landlord does not constitute a waiver of any rights landlord may have, including but not limited to, the right to recover possession of the subject premises pursuant to CCP §1161.1.

cc:   nicholas@nicholaslawrencdesign.com
      lawrence@nicholaslawrencecesign.com

POS-050/EFS-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>NAME: FRED M. SZKOLNIK, ESQ<br>FIRM NAME: FRED M. SZKOLNIK, ESQ.<br>STREET ADDRESS: 16311 VENTURA BLVD. #1060<br>CITY: ENCINO<br>TELEPHONE NO.: (818) 986-3888<br>E-MAIL ADDRESS: lusi@fredszkolniklaw.com<br>ATTORNEY FOR (Name): Plaintiff: COLONNADE | STATE BAR NO<br><br>STATE: CA<br>FAX NO.:  ZIP CODE: 9'436 | FOR COURT USE ONLY |

N/A

STREET ADDRESS: .

MAILING ADDRESS:

CITY AND ZIP CODE: ., CA

BRANCH NAME:

Plaintiff/Petitioner: THE COLONNADE ON EL PASEO, LP

Defendant/Respondent: NICHOLAS LAWRENCE DESIGN

| | |
|---|---|
| PROOF OF ELECTRONIC SERVICE | CASE NUMBER:<br><br>JUDICIAL OFFICER:<br><br>DEPARTMENT: |

1. I am at least 18 years old.

   a. My residence or business address is:
      1301 W Second Street, Suite 204
      Los Angeles, CA 90026

   b. My electronic service address is:

2. I electronically served the following documents:
   NOTICE TO PAY RENT OR QUIT

   ☐ The documents served are listed in an attachment *(Form POS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:

   a. Name of the person served: NICHOLAS@NICHOLASLAWRENCEDESIGN.COM
      On behalf of *(name or names of parties represented, if person served is an attorney):*

   b. Electronic service address of the person served:

   c. On : 8/13/2024

   d. At : 4:12 PM
      ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: August 14, 2024

I declare under penalty of perjury that under the laws of State of California that the foregoing is true and correct.

_____
A. YOST
(TYPE OR PRINT NAME OF DECLARANT)

▶          *Ann Yost*
                    (SIGNATURE OF DECLARANT)

Form Approved For Optional Use
Judicial Council of California
POS-050 [Rev January 1, 2015]

**PROOF OF ELECTRONIC SERVICE**
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251
www.courts.ca.gov